WELLS *v.* THE NEW YORK CENTRAL RAILROAD COMPANY.

A contract between a railroad corporation and a gratuitous passenger by which the former is exempted from liability under any circumstances of the negligence of its agents for any injury to the passenger is not against law or public policy and is valid.

It is immaterial whether the negligence of the agents be slight or gross. The supposed distinction between different degrees of negligence, in respect to the liability of common carriers, discarded as illusory and impracticable

APPEAL from the Supreme Court. Action to recover damages for injuries sustained by the plaintiff, a passenger upon the defendant's road, from a collision between the train in which he was riding and a freight train carelessly left standing upon the track in the night time. The plaintiff paid no fare, but was carried under a free ticket, on which were printed the following words: "The person accepting this free ticket assumes all risks of accidents, and expressly agrees that the company shall not be liable under any cir-

cumstances, whether of negligence of their agents or otherwise, for any injury to the person, or for any loss or injury to the property of the passenger using this ticket." The trial was by the court, a jury being waived; the only evidence received being a stipulation between the parties, and the pleadings.

The complaint was, that the injuries to the plaintiff were caused by, or resulted from, the negligence of the defendants simply, without characterizing that negligence by the vituperative epithet gross, or culpable, or by any other terms or epithet. The answer of the defendants did not deny the negligence, but set up the contract in bar of the action.

The judgment at the circuit or special term, was rendered upon a statement of facts settled and submitted by stipulation of the parties. By this statement, the defendants admitted that the injuries to the person of the plaintiff " were occasioned through and by means of the carelessness and negligence of the defendants and their agents and servants;" but in the statement nothing was said about the negligence being gross.

The justice at the circuit upon the facts so agreed upon and submitted to him by the parties, found and decided, as matter of fact, that the injuries complained of were occasioned by the gross negligence of the defendants, their agents and servants; giving judgment in favor of the plaintiff, as appears from his opinion, on the ground, that the contract was not valid so far as to exempt the defendants from liability for gross negligence.

This judgment was reversed by the general term upon the ground, that, if there was any such practical distinction between gross and any other kind or degree of negligence, as the justice at the circuit seemed to suppose that the contract was valid and effectual to protect the defendant from liability for gross as well as any other kind or degree of negligence.

The plaintiff appealed to this court.

*Amasa J. Parker*, for the appellant.

*Sidney T. Fairchild*, for the respondent.

GOULD, J.   There being made some question whether the indorsement on the ticket ("the person *accepting* this free ticket assumes all risks, &c., and expressly *agrees*," &c.) is a contract, on the part of the passenger, with the company; it seems necessary to say that the word "agreed" means the concurrence of two parties; and that the act of acceptance binds the acceptor as fully as his hand and seal would. (Co. Litt., § 217, note; 5 Hill, 258, 259; 1 Seld., 229; 27 Barb., 140; and cases there cited.)   The point is too well settled to admit of debate.

The true questions in the case arise upon the legality of such a contract; and what acts or omissions it does, by fair construction, cover.   The terms, "negligence," "ordinary negligence," "gross negligence," had their origin in the rules of law as fixed in regard to bailments, generally; and not in regard merely to the duty of common carriers, since they were held responsible for any and every degree of negligence.   But a naked depositary, without reward, was responsible only for gross negligence; and gross negligence, in that use of the term, was considered as evidence of fraud; and, unexplained, equivalent to fraud. (Jones' Bail., 36, 46.)   The term has since been used, in reference to common carriers of goods, as pointing out such acts as they were not at liberty to exempt themselves from liability for, even by an express contract, in terms covering them. That they could not so exempt themselves was decided upon grounds of public policy—evidently for the reason that such acts were evidence of fraud, or willful injury; and that a carrier of goods was in so absolute and unwatched control of the goods, that it would not answer to allow him to rebut such evidence.   And it is of course the law, that no one can, by contract, shield himself from liability for his own fraud, or for his own willful acts.

Holding this to be the true reason of the rule, and its right interpretation, and granting that it applies to individual carriers of persons, does it apply to corporations, which carry persons? Fraud and willful misfeasance include a will, a motive; and a corporation, as such, can have no motive, no will;

though its agents may have both. Still it would hardly do to hold the property of corporators liable for the willful or criminal act of a person employed by the corporation. Such acts cannot be said to be done in the course of his employment.

Were a switchman willfully to misplace a switch, so that a train of cars were thrown off, and many passengers killed; the man would be guilty of homicide; but the railroad company could not be held responsible for the damages, any more than could the owner of a carriage and horses, should his driver willfully run them among a crowd of persons, trampling and crushing all before him.

As to the construction of the contract; it would seem, from what has been said, that the term "*gross negligence,*" as used in the law, has a technical meaning, which is not properly applicable to those acts of servants of a corporation, for which the corporation is responsible; though as between their acts, which are slightly negligent, and those which are very negligent, there is no different rule of responsibility. It is the fact of negligence (mere negligence), and not its degree, which incurs the liability.

This being so, and taking the terms of this contract, "the company shall not be liable under any circumstances, whether of negligence of their agents or otherwise, for any injury, &c., of the passenger using this ticket;"—against what liability does it contract? We are not to give it a construction that would make it illegal, unless that be the only fair construction; and its plain purport provides against "circumstances *of negligence;*" the words "or otherwise" being too vague to be held to bear an illegal meaning. It is, then, a contract not to be liable for the mere negligence of the agents of the company.

I am aware that the judge, at the circuit has found that the act of the agents, in this case, was one of "gross negligence." But in so finding he has gone beyond the stipulation as to the facts; which is that the injuries were occasioned by means of the negligence of the agents; the stipulation covering the same ground as the contract, and the complaint making no other allegation. And the case must be considered as if the

word "*gross*" were omitted in the finding, as it is in the evidence (or stipulation): had the plaintiff wished it in his case, he should have said so, and put it there.

Upon the reasoning above, and upon any legal principle — whether founded upon public policy, or otherwise — there seems to be nothing illegal in such a contract. It cannot, reasonably, be said that because five or ten, persons on a train that carries two hundred, have such passes, there is the less inducement to care on the part of the company, or its agents; or that a feeling of indifference to human life would be thereby caused. The *quantum* of interest, the ratio of motive, is too utterly insignificant, when compared with the vast liability not protected by any contract, and binding the company and its agents to every measure of caution. That agents will be careless; that no considerations are sufficient to induce constant vigilance; we have frequent and terrible proofs. But the holding of such contracts illegal would not even tend to alter the fact.

Independently of, or rather in accordance with, these views upon principle, the case of Wells and Tucker against the Steam Navigation Company (4 Seld., 375), seems an authority of the same general tendency. Although it was there held that the words " at the risk of the owner," did not cover the proved acts of the agents of the defendant; and although the case uses the term " gross negligence " in a sense different from the one above given to it, still the case holds that those defendants did not, not that they could not, protect themselves from liability in the case proved. And (at p. 381), Judge GARDINER said, " Although the law will not suffer a man to claim immunity by contract against his *own* fraud, *I know no reason* why this may not be done in reference to fraud or felony committed by *those in his employment.*" It is by no means necessary, to go so far now, but, *a fortiori,* he may; protect himself by contract against the negligence, in any degree of his agents.

The judgment of the Supreme Court should be affirmed.

DENIO, DAVIES, ALLEN and SMITH, Js., concurred.

SUTHERLAND, J. (Dissenting.) I have no doubt that the plaintiff by accepting the free ticket or pass with the notice printed on the back of it, which he must be presumed to have seen before taking his seat in the cars, intended to contract, and did contract with the defendants, to take upon himself all risk of the passage, not only from accident but from negligence, in consideration of the undertaking on the part of the defendants to carry him free.

The words of the notice are certainly broad enough to include injuries from any kind or degree of negligence culpable, gross, or otherwise, either of the defendants, or of their agents, or employees. The words are " That the company shall not be liable under *any circumstances*, whether of negligence of their agents, *or otherwise*, for any injury to the person," &c.

The question as to the supposed distinction between gross and slight or ordinary negligence is, I think, very fairly presented in this case; for if there is really this distinction (a distinction so important, taken not with reference to a question of damages, but with reference to the validity of the contract itself), I do not see how the justice at the circuit, outside of the stipulation of the parties, was authorized to find and decide, as matter of fact, that the injury to the plaintiff was occasioned by the gross negligence of the defendants, their agents, and servants.

If there is no such practical distinction, which can properly and legally be recognized by a court as bearing on the construction, or the question of the validity of the contract, then the finding of the justice at the circuit, that the negligence was gross, may be considered immaterial: for gross negligence certainly includes negligence.

It has been doubted of late, whether the formal division or classification of negligence in the abstract into gross, ordinary, and slight, recognized in the books, has been useful; indeed, whether it has not tended to produce confusion. (See *Steamboat New World* v. *King*, 16 How., 474; *Wilson* v. *Brett*, 11

Mees. & Wels., 113; *Hintin* v. *Dibbin*, 2 Ad. & Ell., N. S., 646, 661; *Blyth.* v. *Waterworks*, 36 Eng. Law & Eq., 506; S. C., 11 Exch., 781; Angell on Carriers, 3d ed., §§ 22, 23.

This classification of negligence which grew out of the classification of bailments, and which has been considered more particularly applicable to questions of negligence as between bailor and bailee, is founded but upon one circumstance, that is the circumstance of benefit to the bailor, or to the bailee, or of mutual benefit. This circumstance, either of mutual benefit, or of benefit to one or other of the parties only, being a circumstance common to all bailments, was made the foundation or principle of the classification; but it is evident, from the very nature of the subject, that it is and must be a mere abstract, philosophical classification, of little or no use in practice. Courts deal with cases.

Practically, negligence is the want or absence of the care and attention required by all the circumstances of each particular case. This care and attention is enjoined and enforced by the law, in some cases as a social duty; merely, in other cases, on the ground that a particular trust was assumed or undertaken. It is doubtful, whether the care and attention required of a party by the law to free him from the charge of negligence in a particular case can be defined otherwise than as that care and attention which experience has found reasonable and necessary to prevent injury to others in like cases. In all cases of negligence, practically on the trial, the question is, whether the defendant is guilty of negligence, not whether he is guilty of gross, or slight, or ordinary negligence. The negligence may be gross, or slight—as an assault may be gross or slight, but the question of liability, is a question of actionable negligence under all the circumstances of the particular case. At common law the declaration against an unpaid or gratuitous bailee for the loss of the goods of the bailor, did not charge gross negligence, but negligence.

Assuming it to be the law, and to be reasonable, that less care and attention is required of an unpaid bailee or agent, than of a paid one, yet the fact of the bailee or agent being

paid, or not paid, is only a circumstance to be taken into consideration with all the other circumstances of the case, in determining whether a bailee or agent has been guilty of negligence in a particular case; and in an action against an unpaid bailee or agent, the question really is, not whether the unpaid bailee or agent has been guilty of gross negligence, but whether he has been guilty of negligence, that is, whether in executing his gratuitous trust, he used the care and attention required by all the circumstances of the case, including the circumstance that the trust was gratuitous. An unpaid bailee or agent, is required to take more care of a box of diamonds than of a box of sugar-plums: more care might be required in the city than the country; less care might be required and expected of a very old man, than of a man in the prime of life. A judge may say to a jury that an unpaid bailee or agent is liable only for gross negligence, but if he says this with proper explanations, the jury ought to understand by it nothing more than that the law requires less care and attention from an unpaid than a paid bailee or agent, and that the actionable negligence of an unpaid bailee or agent is called gross negligence. If the phrase gross negligence has any other legal or legitimate meaning on a question of liability for negligence, than the negligence of an unpaid bailee or agent, which causes an injury for which the law gives a remedy, I am not able to discover it. Every question of legal liability for negligence, is a question of liability under all the circumstances of the case, for negligence simply. The forms of pleading at common law in actions for negligence show this. In this case the defendants admitted that the injuries to the person of the plaintiff complained of, were caused by negligence.

An injury to the person of one, caused by or resulting from the negligence of another, is a tort. Even the form of assumpsit was not allowed by the common law to enforce a remedy for such an injury to the person.

It is a tort, because the negligence which causes it is the breach of a legal duty, not of a contract. (*Nolton* v. *Western R. R. Co.,* 15 N. Y., 444; *Philadelphia and Reading R. R. Co.* v.

*Derby*, 14 How. U. S. R., 486; *Steamboat New World* v. *King*, 16 id., 474.)

Certainly every kind or degree of negligence, whether it be called gross or ordinary, or slight, which causes an injury to another, for which the law gives a remedy, as for a tort, is and may be called culpable.

The slightest negligence may result in the greatest injury, even in the loss of many lives; the grossest negligence may result in the slightest injury. It is the business of the defendants to carry car-loads of human beings at fearful speed by steam. It has been said that any negligence, the ,slightest, in conducting such a business, may well be called gross. (See case in 14 How. U. S. R., above cited.) Call the admitted negligence of the defendants, their agents and servants gross or slight, or apply to it any other epithet, and the injury to the plaintiff remains the same: the tort remains the same.

It is sometimes said that gross negligence implies, or is equivalent to fraud, but this saying, it seems, cannot be said to be an established legal principle, and it certainly is not practically true. (Story on Bail., §§ 19–23; 1 Parsons on Con., 214, n. a.)

The learned justice who rendered the judgment in this case at the circuit, in finding that the injury to the plaintiff was occasioned by gross negligence, certainly did not intend to charge the defendants, or their agents, or servants, with fraud, or with any intentional wrong. The facts submitted to him would authorize no such charge.

These considerations make it plain to me, that on the question of the validity of the contract between the parties in this case, it was utterly immaterial whether the negligence complained of was gross or slight, or was called gross or slight. Negligence resulting in an injury to another is actionable and culpable as a tort. Whether it is gross or slight (using these words in the sense in which they are used in common parlance, not in the sense of the abstract classification above referred to,) might perhaps be considered on the question of damages, but in this case the amount of damages to be recovered, if a reco-

very was had, was fixed by the stipulation of the parties; and the finding of the judge therefore, that the negligence was gross, was not only immaterial on the question of the validity of the contract, but in every view was outside of the case. It is plain to me, too, that the distinction between gross and other negligence taken at the circuit, on the question of the validity of the contract, never would have been attempted, or thought of, but for the confusion in the cases, resulting from the abstract and impracticable classification of negligence above referred to, and the saying often met with in the books, that gross negligence is the same as or equivalent to fraud.

The classification may be philosophically correct, but it is impracticable; and attempts to make it useful and practicable have produced confusion, and made it mischievous. As to the saying about gross negligence being the same as fraud, the authorities cited, and common sense, show that it should be considered a barren generality; at least barren of good. Negligence, no doubt, may be so gross as to go to show fraud; and when fraud is alleged as the cause of action, may be proved for that purpose.

Assuming then that the delivery and acceptance of the free ticket constituted a contract between the parties, the only question on the admitted facts of this case is, whether the contract is valid and should be enforced, so as to bar the plaintiff from maintaining this action for injuries to his person, resulting from the admitted negligence of the defendants, their agents and servants?

After a careful consideration of this important question, I have come to the conclusion that the contract is illegal and void, and should be held to be so, as against public policy, as declared both by the common law and statute law.

If A request B to beat another, and promise to save him harmless, the promise is void. So if A promise, in consideration of twenty shillings paid to him by B, he will pay B forty shillings if he does not beat G. S. out of such a close, the promise is void. These are cases put in the books, and it said that the contracts are illegal as "*contra bonos mores.*" (2 Lev.,

174; Hutton, 56; Comyn on Con., 31; *Coventry* v. *Barton*, 17 John., 142.)

·It can also be said that such contracts are void, as against the policy of the law punishing such breaches of the peace as misdemeanors.   If A offer to pay B five dollars, to promise that he will not take the law of A if A strikes him, and B take the five dollars and make the promise, and thereupon A strikes B, no one would suggest that B's promise was valid ; but would it not be proper to say that the promise is void, as against the policy of the law punishing the battery as a crime? Certainly any contract which induces, or tends to induce, or encourage the commission of any crime can properly be said to be void, as against the policy of the law declaring and punishing the crime.   After the actual commission of the battery B could abandon or settle his claim for damages as he saw fit, but before the commission of the offence, he could not lawfully agree not to prosecute for such damages without encouraging a public wrong.   In advance of the actual commission of the offence, he could not by contract lay aside the protection of the law for his private and individual benefit without interfering with public interests and the policy of the law punishing the battery as a crime, and therefore the maxim, "*modus et conventus vincunt legem*," would not apply.

It is said that a promise to indemnify one for committing a trespass, the party to be indemnified knowing at the time that the act to be done would be a trespass, would be void. (*Coventry* v. *Barton*, 17 John., 143, before cited; *Stone* v. *Hooker*, 9 ·Cow., 154.)   By the common law, one by whose negligence, even in the prosecution of his lawful business, another was killed, was guilty of manslaughter. (1 East. P. C., p. 262, § 38.)   By the Revised Statutes, the killing of one by the culpable negligence of another, whilst engaged in the prosecution of his lawful business, is manslaughter in the 4th degree. (2 R. S., pp. 661, 662, §§ 6, 13 and 19.)

The words of the statute are culpable (not gross) negligence. Any negligence which is actionable or indictable, is certainly

culpable. The word culpable, as used in the statute, can have no other meaning. It would be absurd and repugnant to the nature and any definition of negligence, to say that the word culpable in the statute implies intention, or the phrase culpable negligence, an intentional wrong. If the absence or want of due care, caution, attention, or diligence in the particular case, which is called negligence, causes an injury to another, which results in death, it is by the statute, and was at common law, indictable.

The act of December 13, 1847, for the benefit of the widow and next of kin of a person whose death has been caused by negligence, not only gives a new remedy or action unknown to the common law, plainly of the nature of a penalty, but by that act, as amended in 1849, every agent, engineer, conductor, or other person, through whose wrongful (not gross) neglect the death of a person shall have been caused, is liable to be indicted therefor.

Is it necessary to advert to any other law or consideration than the common law, and these statutes punishing negligence as a crime, to show that the protection of human life from negligence is a matter of public interest, of public policy? And is it not plain that any contract which may induce or lead, or tend to induce or lead, to a relaxation of the care and attention required by the law as a social duty for the protection of human life, interferes with this public policy, and should be held void, as against the policy of the laws declaring it? The negligence which caused the injury to the plaintiff might have caused his death and the death of many others.

If the plaintiff had paid full fare, and taken the risk of the passage upon himself, his contract would have been void for want of consideration, the defendants being under an admitted obligation to carry all passengers who present themselves on offering to pay the usual fare; but if the contract which the plaintiff did make is held valid, what is to prevent the defendants, or any other railroad corporation putting the fare up nominally to the legal limit, and making a bargain with all their passengers who will consent to enter into such an arrange-

ment, to reduce their fare one-eighth or one-sixteenth of a cent per mile in consideration of their taking upon themselves the risk of the passage. The railroad corporation might thus make money by depriving the public of the protection afforded by their legal liability in damages for negligence. If the undertaking of the defendants to carry the plaintiff free, or without the payment of any money, was a sufficient consideration for the plaintiff's contract to take the risk of the passage upon himself, then a reduction of his fare, however small, would have been a sufficient consideration for such contract. It certainly cannot be necessary to show that liability in damages for a want of care promotes care; and that an extinction of such liability would tend to promote negligence. We certainly have a right to assume that railroad corporations, like individuals, are influenced by motives of self-interest.

The defendants' business is the carrying of passengers on iron rails by steam at great speed. The law requires of them, their agents, and employees, in carrying on that business, the utmost care, all the care that human foresight is capable of. (*Stokes* v. *Saltonstall,* 13 Pet., 181–193; *Philadelphia and Reading R. R. Co.* v. *Derby,* 14 How. U. S. R., 486; *Steamboat New World* v. *King,* 16 How. U. S. R., 474; *Caldwell* v. *Murphy,* 1 Duer, 233; *Camden and Amboy R. R. Co.* v. *Burke,* 13 Wend., 611.)

The duty to use this extraordinary care, is a legal duty independent of any contract with, or fare, or consideration paid by, their passengers. (*Nolton* v. *Western R. R. Co.,* 15 N. Y., and *Philadelphia and Reading R. R. Co.* v. *Derby,* 14 How. U. S. R., before cited.)

Did not public policy originate this requirement of the law? Would it be consistent with this requirement of the law or its policy, to permit railroad corporations to make and enforce contracts with their passengers tending to promote a relaxation of the very care in the selection of their employees and otherwise, which it is the object of this requirement of the law to secure?

But we have so far taken only a very limited view of this question of public policy. All laws punishing crimes against the person, and against the public health, show that the life and health of a citizen is a matter of public interest, of the greatest public consideration. That its citizens constitute the strength and wealth of a State, is an elementary principle of political economy. It certainly cannot be said, that a man has either a moral or legal right to speculate with his own life; or to make any contract tending to remove the safeguards which the law places around it.

It is plain to me from the above general considerations, that the extraordinary liability of the defendants in damages for negligence as carriers of passengers, was not declared by law, nor is it enforced by law, for the benefit only of the party injured in any particular case; but, it was declared and is enforced for the benefit of the public also; and therefore a passenger cannot by contract in advance of the injury, lay aside even his individual benefit from the law or rule of liability. The maxim, "*quilibet potest renunciare juri pro se introducto*" does not apply in such a case. Public considerations and the policy of the rule or liability itself, forbid that it should.

I think, too, it may be said that to enforce the contract in question, would interfere with the policy of the very laws from which the defendants derive their existence and their powers. (Laws of 1853, ch. 76; Laws of 1850, ch. 140.)

They are a private corporation, yet in theory, at least, they were incorporated from public considerations, and for the public good. Hence the powers given to them which interfere so materially with private rights.

They are constituted carriers of persons and property (Laws of 1850, ch. 140, §§ 1, 36), and are expressly made liable for any damages occasioned by their neglect of duty.

As carriers of passengers as well as of property, they may be considered as acting in a public capacity, and as a kind of public officers. (*Bretherton* v. *Wood,* 3 Brod. & Bing., 54; *S. C.,* 9 Price R., 408.)

Their admitted obligation to carry all passengers who present themselves and are to pay the usual fare, is conclusive evidence that they are considered as acting in a public capacity in carrying passengers.

The care and diligence, then, expressly imposed upon them as carriers of passengers by the very law defining their powers and duties as a corporation, is imposed upon them as a public duty.

Can it be said, that any contract tending to prevent, or relax, or modify the performance of a public duty imposed by law, is valid? Is not such a contract void, as against the policy of the law imposing the duty?

Moreover, I think it can properly be said, that the defendants had no power to enter into the contract or arrangement which was made with the plaintiff. And on this question of power, all the considerations of public policy before adverted to are proper and apply. It was a speculative contract outside of their charter. It cannot properly be said that they undertook to carry the plaintiff free or without consideration. They undertook to carry him in consideration of his agreeing not to hold them responsible for any injury, even for an injury resulting from their neglect of a legal public duty.

Can it be supposed, that the legislature ever intended to give the defendants, the implied right or power to enter into any such contract or arrangement with their passengers? I think not. All the considerations of public policy before adverted to forbid the idea.

The duty of due care and diligence is cast upon the defendants by the law creating them a corporation, and they cannot cast it off by contract.

It has been said that the cases holding, that a servant cannot recover of his master for the negligence of his fellow servant in the same business or employment, show that the contract in question is valid.

It is said, I believe, in some of the cases, that these decisions rest partly upon the ground, that the servant entering into the employment must be supposed to contract to take upon him-

self the risks of the negligence of his fellow servants.  But there really is not in such cases any contract, express or implied.

The general rule of law is, that the master is responsible for the negligence of the servant.  The real ground of the decisions, last referred to, I take to be, that the policy of the rule itself does not require its application in such cases.  The reason of the rule ceasing in such cases, the rule is not applied.  Indeed, it may be said, that the policy of the rule itself is promoted by not applying it in such cases; for it is evident, that by not applying it, it is made the interest of servants to be watchful of each other, and to inform the master of each other's delinquencies.

My conclusion, is, that the judgment of the general term in this case should be reversed, and the judgment of the justice at the circuit or special term affirmed, not upon the ground that the injury to the plaintiff was caused by gross negligence, but upon the ground that it was caused by the negligence of the defendants, their agents and servants; and upon the ground that the contract of the plaintiff to exempt the defendants from responsibility for such negligence was, and is, illegal and void, for the reasons, and on the grounds above stated.

WRIGHT, J., also dissented; SELDEN, Ch. J., was absent.

Judgment affirmed.