The Indiana Central Railway Co. *v.* Mundy.

*Per Curiam.*—The judgment below for the sale of the boiler is reversed, with costs.

*Bickle & Burchenal,* for the appellants.

*H. B. Payne* and *J. P. Siddall,* for the appellee.

––––––––

THE INDIANA CENTRAL RAILWAY CO. *v.* MUNDY.

RAILROADS—LIABILITY—EXEMPTION.—Where a person traveling on a railroad receives from the company a free pass, upon which is indorsed a statement that, "it is agreed that the person accepting this ticket assumes all risk of personal injury and loss or damage to property whilst using the same on the trains of the company," such indorsement or agreement does not cast upon such person any risks arising from the gross negligence of the servants of the railroad company in running the train; and it would seem that such agreement does not cast upon such person any risks arising from any negligence of the servants of the railroad company in running the trains.

APPEAL from the *Marion* Circuit Court.

WORDEN, J.—This was an action by *Mundy* against the company to recover damages for an injury received by him while riding upon a train of cars of the defendant, through the alleged carelessness of the agents of the company. Verdict and judgment for the plaintiff.

The facts are briefly these: The plaintiff shipped on board the defendant's cars, at *Indianapolis*, a steam fire engine, to be transported to *Richmond*, on which he paid the freight. He also, being desirous of accompanying the engine, with his assistant, procured from the company, without further con-

sideration than the freight on the engine, a pass, in the following terms, viz:

"CONDUCTORS: Pass free *F. Mundy* and *S. Wicks* from *Indianapolis* to *Richmond.* J. S. NEWMAN,

"Pres't Ind. Central Railway Co."

(Turn over.)

On the back of which were printed the following words: "It is agreed that the person accepting this ticket assumes all risk of personal injury and loss or damage to property whilst using the same on the trains of the company."

About the time the train on which the engine was placed was about to start, the plaintiff entered a passenger carriage which was attached to the back end of the train, having inquired and being told that that car was going to *Richmond.* The train started with the carriage which the plaintiff had entered attached. The train proceeded a short distance when an employee of the company told the plaintiff to get into the car ahead if he was going in that train. The plaintiff went from where he was then standing and got his carpet sack, &c., and went out upon the platform of the car and stepped with one foot across upon the car ahead, but before he could get across upon the other car as directed, the passenger car slackened its speed and separated from the other, the pin or bolt connecting them having been withdrawn without the plaintiff's knowledge, and the plaintiff fell upon the track between the cars, and was run over and severely injured by the passenger car. The car was thus detached by an employee of the company for the purpose of leaving it.

A new trial was asked on the ground that the verdict was not sustained by the evidence, and because the Court erred in giving the fifth, sixth and eighth instructions, and in qualifying the fifth instruction asked by the defendant, as will be hereafter stated.

These several instructions arc as follows:

"No. 5. The indorsement upon the pass given to the plaintiff can not relieve the railroad company from responsibility for injuries sustained by the plaintiff in consequence of gross negligence in running and managing the train."

"No. 6. The indorsement upon the pass can not relieve the railroad company from responsibility for injuries sustained by the plaintiff in consequence of the gross and willful negligence and mismanagement of the agents of the company in running and arranging the train."

"No. 8. The indorsement upon the pass given to the plaintiff can not be construed as stipulating for willful misconduct, gross negligence, or want of ordinary care in the running and management of the train by the agents of the company; if it were competent for the company to stipulate for the gross negligence of her agents, it could be done only in terms that would leave no doubt as to the meaning of the parties."

The fifth instruction asked by the defendant is as follows:

"If the jury find from the evidence that the plaintiff received from the defendant the pass set out in the third paragraph of the complaint, and in the defendant's answer, indorsed on the back as therein stated, and the plaintiff could read the same, said pass and condition amounted to a contract between the plaintiff and defendant, which it was competent for the parties to make, and the defendant would not be liable for the injuries received by the plaintiff while he was riding upon said train and using said pass." This charge was given, but the Court added at the end, "except for willfully gross negligence on the part of the defendant."

Counsel have discussed the question whether a common carrier can by contract exempt himself from liability for the consequence of his negligence. We shall not, in the present case, decide that question, it being unnecessary to do so. We may remark, however, that the authorities upon the point

The Indiana Central Railway Co. v. Mundy.

seem to be conflicting. In a late case in *New York* it was held that such a contract with a gratuitous passenger was valid. *Wells* v. *The New York Central R. R. Co.*, 24 N. Y. 181; *vide* also *Perkins* v. *Same, id.* 196. It is thought that the weight of American authorities is the other way, but we pass this point without expressing any opinion upon it either way.

We go back to the terms of the pass or contract in question. By that the plaintiff "assumed all risk of personal injury and loss or damage to property whilst using the same on the trains of the company." Without undertaking to determine precisely what risks the plaintiff assumed by this contract, we think it clear, under the authorities, that he did not assume any risks arising from the gross negligence of the servants of the defendant in running the train. It may be that there is no foundation for the classification of the degrees of negligence, as "slight," "ordinary," and "gross," and that we should say negligence without the epithet "gross." *Vide* the cases above cited from *New York*, also Story on Bailment, sec. 17 and note.

The following authorities on the construction of the contract seem to us to be in point and decisive. *New Jersey Steam Navigation Co.* v. *Merchants' Bank*, 6 How. U. S. 344. There one *Harnden* had shipped goods with a carrier to be transported. The Court say, (p. 383): "The special agreement in this case, under which the goods were shipped, provided that they should be conveyed at the risk of *Harnden;* and that the respondents were not to be accountable to him or to his employers, in any event, for loss or damage. The language is general and broad, and might very well comprehend every description of risk incident to the shipment. But we think it would be going farther than the intent of the parties, upon any fair and reasonable construction of the agreement, were we to regard it as stipulating for willful misconduct, gross negligence, or want of ordinary care, either in the sea

worthiness of the vessel, her proper equipments and furniture, or in her management by the master and hands. * * * If it is competent at all for the carrier to stipulate for the gross negligence of himself and his servants or agents, in the transportation of the goods, it should be required to be done, at least, in terms that would leave no doubt as to the meaning of the parties."

In that case the language of the contract was much broader than in the case at bar. There it was not only stipulated that the goods should be at the risk of *Harnden*, but it was further agreed that the respondents were not to be liable in any event for loss or damage. In *Wells & Tucker* v. *The Steam Navigation Company*, 4 Selden 375, it was held that, where a boat was to be towed "at the risk of the master and owners," the contract had reference to the perils of navigation not arising from the gross negligence of the contractor. "That a stipulation in a contract to exempt from gross negligence must be specific and distinct. It will not be implied from a clause containing a general expression which might otherwise be so construed." To the same effect is the case of *Wright* v. *Gaff*, 6 Ind. 416. There a flat boat was to be towed at the risk of the owner. It was held that the steamer towing the boat was liable for gross negligence.

The above cases in Howard and Selden are approved in *Perkins* v. *New York Central Railroad Company, supra*, p. 206. *Vide*, also, *Pennsylvania Railroad Company* v. *McClosky's Adm'r*, 23 Penn. 526.

The contract in question not exempting the railroad company from the consequences of gross negligence, but little more need be said in the case. We have not examined the charges given at the instance of the plaintiff very critically, though in the main they appear to be correct; but if they were not altogether accurate they were set right by the sweeping charge given at the instance of the defendant, with the

The Indiana Central Railway Co. *v.* Mundy.

qualification appended by the Court. By this charge the Court told the jury that, under the contract, the defendant would not be liable "except for willfully gross negligence on the part of the defendant." Of the charges, taken all together, we think the defendant has no just ground of complaint.

On the evidence, we can not disturb the judgment.

*Per Curiam.*—The judgment below is affirmed, with costs.

*Newcomb & Tarkington,* for the appellants.[1]

*Thomas A. Hendricks* and *B. K. Elliott,* for the appellee.[2]