## NICHOLAS v. NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY.

*Common carrier — may contract against liability from negligence.*

The plaintiff shipped by defendant's railroad on the 4th of March perishable property liable to be destroyed by freezing. At the time of shipment he executed a release to defendant from liability for loss or " damage to perishable property of all kinds occasioned by delays from any cause or change of weather, or loss or injury by fire or water, heat or cold." *Held*, that the defendant was relieved from liability for a loss by freezing occasioned by the negligence of defendant's servants.

APPEAL by defendant from an order at special term denying new trial after verdict for plaintiffs at the circuit.

The action was brought by George W. Nicholas and another against the New York Central and Hudson River Railroad Company to recover damages for loss of a quantity of quince stock claimed to have been destroyed by frost through the negligence of the defendant. The stock was shipped in New York, March 4, 1872, and consisted of fifteen cases of trees which were delivered to the defendant on that day and arrived at Geneva, the place of destination, on the 12th of the same month. The proofs show that a heavy snow storm began on the said 4th of March and continued for several days thereafter, blocking up the defendant's road westwardly of Utica and at Syracuse particularly, accompanied by very cold weather. When the property was delivered at the defendant's depot in New York the plaintiffs executed an instrument of release which recited the fact of the said shipment, and released the defendant among other things from all liability for any loss or " damage to perishable property of all kinds occasioned by delays from any cause or change of weather," also for " breakage or chafing, or loss or injury by fire or water, heat or cold."

At the close of the evidence the defendant's counsel asked the court to nonsuit the plaintiffs on the ground that, by the terms of the said contract, the defendant was absolutely discharged from the claim of damages mentioned in the complaint, irrespective of the question as to whether it was occasioned by the neglect of the defendant or otherwise, and also asked the court to direct a verdict for the defendant on the same ground, which motions the court denied, respectively, and the defendant's counsel duly excepted to such decisions. The case was submitted to the jury, who found a verdict for the plaintiff for $2,000 damages.

The defendant's counsel excepted to the charge upon the same ground stated in the motion for a nonsuit, and moved for a new trial at special term, which was denied.

*E. G. Lapham,* for appellant.

*F. Sill,* for respondent.

Present — MULLIN, P. J., E. DARWIN SMITH and MORGAN, JJ.

E. DARWIN SMITH, J. The issue submitted to the jury was simply whether the loss of the plaintiffs' quince stock was caused by the defendant's negligence. The judge stated to the jury that the gist of the action was the alleged negligence of the defendant, and that if they came to the conclusion in view of all the evidence that the freezing and the injury to the trees was the result of neglect, of the want of due care on the part of the employees of the railroad company, the plaintiffs were entitled to recover.

No complaint is made that the judge did not direct or allow the jury to take into consideration all the facts relating to the snow storm and the extreme cold weather accompanying the same, so far as such facts furnished an excuse for delay in the delivery of said property and repelled the charge of negligence. The verdict of the jury must, therefore, be deemed a conclusive finding against the defendant on the issue of negligence. The only question for our consideration is, therefore, the same raised, discussed and decided at the circuit, whether the instrument of release executed by the plaintiffs excludes this question of negligence and discharges the defendant from all loss and damages consequent therefrom.

It is well settled in this State and country that a common carrier

may by express contract limit his common-law liability as an insurer, in respect to property received by him for transportation, as against all loss and damage however occasioned, except as against his own personal negligence or fraud. The cases in this State which assert and sustain this doctrine, to wit.: *Dorr* v. *N. J. Steam Nav. Co.,* 11 N. Y. 485; *Parsons* v. *Monteath,* 13 Barb. 353; *Wells* v. *N. Y. Cent. R. R. Co.,* 26 id. 641, and 24 N. Y. 184; *Smith* v. *N. Y. C. R. R. Co.,* 29 Barb. 132, and 24 N. Y. 222; *Bissell* v. *N. Y. C. R. R. Co.,* 29 Barb. 602, and 25 N. Y. 442; *Poucher* v. *N. Y. C. R. R. Co.,* 49 id. 263; *Perkins* v. *N. Y. C. R. R. Co.,* 24 id. 196, and others have recently been reviewed and considered in the United States Supreme Court, in the case of *Railroad Co.* v. *Lockwood,* 17 Wall. 366, in an elaborate opinion by Judge BRADLEY, in which he questions the soundness of these cases so far as they allow the carrier to exonerate himself by contract from his own negligence or that of his servants.

If the courts of this State have erred in relaxing too far the rule of the common law on this point, they have done so in a large degree from respect to the decisions of the Supreme Court of the United States in the case of *N. J. Steam Nav. Co.* v. *Merchants' Bank,* 6 How. (U. S.) 344, which they have generally followed and regarded, as it is the leading case on this subject. The cases in this State have uniformly held that a contract of a carrier, exempting himself from liability for loss or injury in the carriage of goods, should not be deemed to include negligence by any general words, nor unless the contract in clear and explicit terms embraces negligence. In this particular, too, they have followed the case of *N. J. Steam Nav. Co.* v. *Merchants' Bank, supra,* in which Judge NELSON said, at page 383: "If it is competent at all for a carrier to stipulate for the gross negligence of himself and his servants or agents in the transportation of goods, it should be required to be done at least in terms that would leave no doubt as to the meaning of the parties."

The release in this action set up by the defendant does not by its terms embrace negligence or purport to discharge the defendant from loss or damage caused by or resulting from the negligence of the defendant, its agents or servants. The question, therefore, arising upon such release is, whether it does not necessarily embrace negligence, to give it any real or practical effect. It must

do so, as Judge NELSON states the rule " in terms that would leave no doubt as to the meaning of the parties."

In the said instrument of release, the plaintiffs, in express terms, " releases the defendants from liability for loss or damage to perishable property of all kinds, occasioned by delays from any cause or change of weather," also from damages or loss from " breaking or chafing, or loss or injury by fire or water, heat or cold." The loss or damage in this case was clearly occasioned by *delays*, by change of weather and by cold. All three of these elements or causes of loss and damage are expressly mentioned in the release, and are particularly and expressly released and discharged.

It is difficult to give any force to these terms in the release which shall leave the defendant liable for negligence from such causes. The property was perishable. The defendant in respect to such property would not be liable at common law for loss by heat or cold, unless it or its servants were guilty of some negligence in its care or dispatch. For mere *delay* in its transportation, the defendant is discharged. This was really the only ground of complaint and would constitute the only basis for a cause of action independent of this release. While these trees were in the process of transportation by the carrier, they were injured and destroyed by *cold*, by change and severity of *weather*. This was an act of God against which the defendant could not guard, and in respect to which it was not responsible.

The case seems to me to fall completely within the rule asserted in *Cragin* v. *New York Central R. R. Co.*, 51 N. Y. 61. In that case the contract stipulated, in regard to a lot of hogs transported from Buffalo to Albany by the defendant, " that the defendant should not be liable for any loss or damages which might be sustained by reason of any delays or in consequence of heat, suffocation or ill effects from being crowded." The hogs, for the loss of which the action was brought, died from the effects of *heat*, the result of the negligence of the defendant's agents, in not watering, wetting, washing and cooling off said hogs on the way to their destination. The Commission of Appeals held that, to give any effect to this stipulation, it must be held to be intended to exempt the defendant from negligence in consequence of which the hogs died from heat.

I do not see how the two cases can be distinguished. The damage in this action was the result of *cold*, and in the case of *Cragin* v. *N.*

*Y. C. R. R. Co.*, it was the result of *heat*. The parties must have intended that the release should have some effect. The particular risks are specified in the release, and the contract must be applied to the risks particularly named, and to which the property, at that season of the year, when it was made, was especially exposed.

The plaintiffs stipulated that, in consideration that the defendant received and carried such property, liable to extra hazard, at ordinary tariff rates, to release it from the risks in question. This release should be considered and construed like all other contracts, in view of the facts existing when it was made. The plaintiffs' quince trees were presented for shipment at the defendant's depot in New York, on the 4th of March. They were perishable property and were liable to be injured or destroyed by freezing. It was essential, therefore, to their preservation that, in the then state of weather, which was very cold and growing colder, they should be forwarded to their place of destination, where they could be housed and protected with dispatch. The defendant's agents, understanding these facts as well as the plaintiffs, acted in reference to them, and caused the car containing these trees to have attached to it a large card nailed to the door, marked: "*Perishable property. Hurry through. This car must not be detained;*" and also, "*If this car is disabled, transfer the property and hurry forward;*" also one other large card, marked: "*Trees — perishable. Hurry through.*"

These cards indicate the exigency of the case as relating to said trees, as understood by both parties at the time. With the knowledge that these instructions were thus given, and upon the assumption that they would be observed and obeyed by the agents and employees of the defendant with ordinary care and diligence, the plaintiffs might not unreasonably execute the release in question, and take upon themselves all the risks attending the transportation of said trees from New York to Geneva. At least the release was executed by them under these circumstances, and is before us.

We can only hold that it, by its explicit terms, does clearly and necessarily include all negligence committed by the agents and employees of the defendant in the charge and transportation of said property, which occasioned its loss.

If the Supreme Court of the United States is right in the view, as stated in one of the conclusions in the case of *Railroad Co.* v.

*Lockwood, supra,* that it is not just and reasonable, in the eye of the law, for a common carrier to stipulate for exemption from responsibility for the negligence of himself or his servants, the law can now only be changed in this State by an act of the legislature as it has been in England by an act of Parliament, passèd in 1854, called the Railway and Canal Traffic Act.

The order denying the motion for a new trial must, therefore, be reversed, and a new trial granted, with costs to abide the event.

*Order reversed, and new trial granted.*