## G., C. & S. F. R'y Co. v. JOHN McGOWN.

(Case No 2204)

1. RAILROADS—PASSENGERS—FREE PASS—One who has received from a railway company a pass with conditions thereon, and who has used it to procure free passage, must be held to have consented to its conditions, as fully as though he had signed the pass.

2. SAME—COMMON CARRIERS OF PASSENGERS—NEGLIGENCE—LIABILITY CANNOT BE LIMITED BY CONTRACT—FREE PASSENGERS—A common carrier of passengers cannot by contract relieve itself from responsibility, or even limit its liability, for injuries to a passenger resulting from the negligence of itself or its employes, or agents, in the scope of their employment; and this is so with reference as well to passengers traveling free of charge as to those paying full fare.

3. SAME—The liability of the carrier of passengers does not depend on the fact that compensation for the passenger has been paid to it, but the same degree of care is incumbent on the carrier in the case of a passenger traveling on a free pass as in the case of one paying full fare.

4. SAME—CARRIERS OF PASSENGERS — CORPORATIONS—NEGLIGENCE OF AGENT—The negligence of the agent, of whatsoever grade, of a corporation pursuing the business of a common carrier, is, as to matters within the scope of the employment, with reference to passengers, the negligence of the corporation itself, and fixes a liability which the carrier cannot avoid or limit by contract.

APPEAL from Galveston.   Tried below before the Hon. Wm. H. Stewart.

This was a suit by John McGown against the Gulf, Colorado & Santa Fe Railway Company for damages for personal injuries caused by the derailment of the company's passenger train, on which the plaintiff was at the time a passenger, and traveling on a free pass. The petition laid the damages at $20,000.

The specific charges of negligence were that the road-bed was defective and in bad condition, through rotten and defective ties, unevenness, and defectively spiked rails; that the train was running with great and unusual speed around a curve, where such speed was dangerous; that the number of employes on the train was not sufficient, and that they were not stationed, as required by law, at such

places as to be most conducive to the safety of train and passengers ; that the train was running at a dangerous speed for the condition and character of the track at the place of accident; that one or more of the wheels under one of the derailed cars was loose and in a condition of great danger, which was known to defendant before the accident.

Defendant pleaded general denial, denial of all negligence, and allegations that the accident occurred without fault or negligence of defendant; that plaintiff was traveling on a free pass, given to him without consideration, as a gratuity, upon which was printed this contract : "Free passengers assume all risks of accidents to their persons and property, without claims for damages upon the corporation," which condition was known to plaintiff when he accepted and used the pass, and' was assented to by him ; that plaintiff knew of the condition of the pass when he accepted the same, and knew that defendant would not have given him the pass or allowed him to use the same, had it not believed that he had, in good faith, assented to and would abide by its condition, and that he harbored the secret and undisclosed intention to repudiate its condition, notwithstanding his apparent assent thereto, in case of injury to him while traveling on the same.

The cause was tried before a jury, and resulted in a verdict and judgment for the plaintiff for $1,000. The defendant appealed.

On the trial, the court, after defining to the jury the degree of diligence exacted of railway companies in the carriage of passengers, instructed them as follows : "These principles of law apply equally whether such passenger was a passenger for hire, or was riding on a free pass, such as was in evidence in this case, and if you believe from the evidence that the plaintiff, John McGown, was riding on defendant's train as a passenger, on a free pass, a copy of which is in evidence, and while he was on the train, the car in which plaintiff was riding was derailed and thrown from the track, and that thereby he sustained personal injuries, he would be entitled to your verdict for such damages, * * * * unless you believe, from the evidence, that such injuries were not caused by the negligence of the company, or by the negligence of some employe, or employes, of defendant company."

*Ballinger, Mott & Terry*, for appellant, that a railroad company may, by contract with a free passenger, exempt itself from liability for injury to such passenger, from whatever cause, except the gross negligence of its board of directors, or general managing officers, cited :

Kinney v. Central Ry. Co., 32 N. J. L. 407; Kinney v. Central Ry. Co., 34 N. J. L. 513; Wells v. N. Y. C. Ry. Co., 24 N. Y., 181; Perkins v. N. Y. C. Ry. Co., 24 N. Y. 196; Bissell v. N. Y. C. Ry. Co., 25 N. Y.. 442; McCawley v. Furness Ry. Co., 8 Q. B. 57; Gallin v. L. & N. W. Ry., 10 Q. B. 212; Hall v. N. E. Ry. Co., 10 Q. B. 437; Duff v. G. N. R. Co., 20 Albany, L. J. 398; Alexander v. Ry. Co., 33 Upper Canada (Q. B.) 474; Poucher v. Ry. Co., 49 N. Y. 263.

That a railroad company may, by contract with a free passenger, exempt itself from liability for all injury to such passenger, except such as may occur through the gross negligence of the company, or of its servants or agents, they cited: Ill. C. R'y v. Read, 37 Ill. 484; Boyce v. Anderson, 2 Peters 151; 2 Wood's R'y Law, 1440; Williams v. Taylor, 4 Porter (Ala.) 334; Arnold v. Ill. C. R'y, 83 Ill. 273; s. c. 25 Am. Rep. 383; Ind. C. R'y v. Munday, 21 Ind. 48.

*Howard Finley and Hume & Shepard*, for appellee, that a railway company is bound to exercise a very high degree of care in the carriage of passengers for hire, cited: H. & T. C. R'y Co. v. Gorbett, 49 Tex. 573; Tex. & St. L. R'y Co. v. Suggs, 62 Tex. 323; I. & G. N. R'y Co. v. Halloren, 53 Tex. 46; Railroad Co. v. Horst, 93 U. S. 291; Phila. & Reading R'y Co. v. Derby, 14 How. 486; Thompson's Law of Carriers, p. 200, secs. 4, 7, 9; Sherman & Redfield on Neg. sec. 266, et seq.; Louisville C. R'y Co. v. Weames, 8 A. & E. R'y Cases, 499, and authorities cited in note thereto; Lemon v. Chansler, 68 Mo. 340.

That public policy demands that the same degree of care shall be exercised in the carriage of free passengers as in the carriage of those for hire, they cited: Prince v. I. & G. N. R'y Co., 5 Tex. Law Rev. 303; T. & P. R'y Co. v. Garcia, 62 Tex. 285; H. & T. C. R'y Co. v. Hampton, 5 Tex. Law Rev. 579; Phila. & Reading R'y Co. v. Derby, 14 How. 486; Steamboat New World v. King, 16 How. 469; R'y Co. v. Lockwood, 17 Wall. 357; R'y Co. v. Stevens, 95 U. S. 655; Lemon v. Chansler, 68 Mo. 340; Todd v. Old Colony R'y Co., 3 Allen 18; Wilton v. Middlesex R'y Co., 107 Mass. 108; F. R'y Co. v Weir, 37 Mich. 111; Seybolt v. R'y Co., 95 N. Y. 562; s. c., 47 Am. Rep. 75; Indianapolis R'y Co. v. Beaver, 41 Ind. 493.

That contracts limiting the liability of carriers of passengers are contrary to public policy, and, if made, will not be enforced, they cited: R'y Co. v. Stevens, 95 U. S. 655, sup. 660; R'y Co. v. Lockwood, 17 Wallace 357; Cooley on Torts, 686; Sherman & Redfield on Neg. sec. 274, and notes; Lawson's Contracts of Carriers, p. 278, sec. 218; Id. 273, sec. 215; Id. 279, et seq.; Jacobus v. St. P. & C. R'y

Co., 20 Minn. 125; O. & M. R'y Co. v. Selby, 47 Ind. 472; Rose v. Des Moines Valley R'y Co., 39 Iowa 246; Mobile & O. R'y Co. v. Hopkins, 41 Ala. 486; R'y Co. v. Little, 71 Ala. 614; C., P. & A. R'y Co. v. Curran, 19 Ohio, St. 1; Knowlton v. Erie R'y Co., 19 Ohio St. 260; Penn. R'y Co. v. Butler, 57 Pa. St. 335; Kimball v. B., C. & M. R'y Co., 13 A. & E. R'y cases, 55, and note p. 58; Abell v. West Md. R'y Co., 20 A. & E. R'y cases, 503; L. B. R'y Co. v. Chenowith, 52 Pa. St. 382.

STAYTON, ASSOCIATE JUSTICE.—There was such evidence as to justify a verdict in favor of the plaintiff if he had been an ordinary, fare-paying passenger. The charge assumes that the same degree of care is incumbent upon a carrier of passengers in the case of one traveling on a free pass as in the case of a passenger paying full fare, and if this be not the law, the charge given was erroneous, and some of the charges asked and refused should have been given.

The appellee applied for and received a free pass from Galveston to Fort Worth, and to return from the latter to the former place, which on its face had the following words: "Good for one trip only, upon conditions endorsed hereon, when countersigned," etc. On the back of the pass was the following: "Not transferable. If presented by any other person than the individual named hereon, the conductor will take up this ticket and collect fare. Free passengers assume all risks of accidents to their persons and property, without claims for damages upon the corporation. Good for passage only when signed by the person to whom issued."

The appellee was traveling on this pass, which he presented to the conductor, who detached therefrom the coupon evidencing his right to travel from Galveston to Fort Worth, gave him a check and returned the pass to him, without requiring him to sign it. Under the evidence, the fact that he used the pass without signing it we deem a matter of no importance. Having received and used it to procure free passage, he must be held to have consented to its conditions as fully as though he had signed it.

Treating the pass as the evidence of a contract between the parties, and giving to it the most favorable construction for the appellant, the question in the case broadly stated is, can a public carrier of passengers so contract as to relieve itself from liability for an injury to a passenger, from the negligence of the carrier or its servants, in the course of their employment? That there are many cases which hold that a public carrier of passengers may so limit its liability, cannot be questioned. Such is the rule asserted in the following English

cases: McCawley v. Furness Ry. Co., 8 Q. B. 59; Gallin v. Ry. Co., 10 Q. B. 215; Neale v. Ry. Co., 10 Q. B. 440.

In Wells v. Ry. Co., 24 N. Y. 181, it was held, by a divided court, that such contracts were valid, and that it was immaterial whether the negligence of the agents be slight or gross; that the carrier might thus protect itself from liability for an injury resulting from any degree of negligence of its agents. The opinion, in effect, however, holds that while an individual pursuing the business of passenger carrier cannot exempt himself, by contract, from liability for an injury that results from his gross negligence, yet, that a corporation pursuing that business is not liable for the gross negligence of its agents.

In Perkins v. Ry. Co., 24 N.Y. 196, it was held that while a railroad corporation cannot exempt itself from liability to a passenger for damage resulting from its own willful misconduct or recklessness, which alone is construed to constitute negligence, yet, in respect to gratuitous passengers, it may contract for exemption from liability for any degree of negligence in its servants, other than the board of directors or managers, who represent the corporation itself for all general purposes. This ruling was made, as we may infer, from the opinion of one of the judges in a case in which the injury resulted from the use, by a trackmaster, of rotten material in the construction of a bridge.

Practically, the same ruling was made in Bissell v. Ry. Co., 25 N. Y. 443; but in this, as in the former cases, there was a divided court. In Kinney v. Ry. Co., 32 N. J. 408, the same rule was asserted by the supreme court of New Jersey. In that case it was held that in contracts for free passage, the public carrier drops that character and becomes a mere private carrier, whose liabilities are to be determined by the same rules which are "applicable to the ordinary class of gratuitous bailments, or of persons rendering an unbought service." The same rulings were made in the same case by the court of errors and appeals, 34 N. J. 514.

It is held in Illinois that a public carrier may relieve itself from liability to a free passenger for an injury resulting from the negligence of employes in a degree less than gross. I. C. Ry. Co. v. Read, 37 Ill. 484.

The distinction made in the New York and New Jersey cases, to which we have referred, between the negligence of the corporation acting through its president and board of directors, and the negligence of other employes, servants or agents of the company, is denied in the case last cited.

In the nature of things, every corporation must act solely through

agents, and that their powers and duties may differ in degree, it seems to us, should make no difference, in so far as duties and liabilities to passengers, whether free or paying full fare, are concerned. The true inquiry, at last, is, did the injury result from the negligence of any agent of the corporation, while acting within the scope of his employment? If a corporation may relieve itself from liability to a passenger for the negligence of one or more classes of agents, why may it not for the negligence of another class? All of a corporation's employes, from the highest official to the humblest laborer, are but agents. Some of them are necessarily clothed with extensive powers, to make contracts which will bind the corporation in reference to many matters, and to control its operations, while others have but simple labors to perform; yet, none of them are the corporation, clothed with its full power or responsible for all its acts.

We are of the opinion, that the distinction sought to be made in the New York and New Jersey cases, to which we have referred, has no solid foundation in reason or in public policy, when considered with reference to the right of a corporation pursuing the business of a common or public carrier to limit, by contract, its liability to a passenger for injury resulting from the negligence of any class of its agents.

That, in the nature of things, the negligence of the agent, of whatsoever grade, as to matters within the scope of his employment, with reference to passengers, is the negligence of the corporation itself, which, all the American cases agree, fixes a liability which the carrier cannot be permitted to avoid by contract.

We are further of the opinion, that a railway company cannot, by contract, lay down its public character as passenger carrier, which the law, as well as the nature of the employment in which it engages, fixes upon it, and become a mere private carrier. The constitution of this state, the general laws and the charters of such corporations, make their employment that of common or public carriers of passengers and goods. Const., art. 10, sec. 2 ; R. S., ch. 10.

This employment they voluntarily assume, and, in recognition of the public nature of their business, the law bestows upon them many privileges and benefits which it does not confer on private persons or strictly private corporations, which often operate as a burden on individuals and communities, and could not be lawfully conferred on the mere private carrier.

We are further of the opinion, that the rules governing gratuitous bailments in reference to the degree of care incumbent on the bailee, can have but little, if any, application in cases in which, in any man-

ner, the relation of carrier and passenger is established; for, behind any contract by which this may be created, stands a public policy which even the parties ought not to be permitted to thwart.

The question whether a railway company—a public carrier of passengers—can relieve itself by contract from liability, even to a free passenger, for an injury which results from the negligence of any of its employes or agents, of whatsoever grade, has not been decided in this state, but arises in this case. It seems to us, upon principle, that it must be held, that such a carrier cannnot relieve itself, by contract, from responsibility for injury that results from negligence, such as will fix liability upon the carrier under the general rules applicable to the ordinary relation of carrier and passenger. That the liability of the carrier does not depend on the fact that compensation for the passage is paid to the carrier, is well settled. Railroad Co. v. Derby, 14 How. 486; Steamboat New World v. King, 16 How. 469; Todd v. R'y Co., 85 Mass. 20; Prince v. R'y Co., 64 Tex. 153; Abell v. R'y Co., 21 A. & E. R. Cases, 503; Brownfield v. R'y Co., 21 A. & E. R. Cases, 88.

The relation of passenger and carrier is created by contract, express or implied, but it does not follow from this that the extent of liability or responsibility of the carrier is, in any respect, dependent on a contract. In reference to matters indifferent to the public, parties may contract as they please; but, not so in reference to matters in which the public has an interest. For the purpose of regulating such matters, rules have been established, by statute or the common law, whereby certain duties have been attached to given relations and employments. These duties attach as matter of law, and without regard to the will or wish of the party engaged in the employment, or of the person who transacts business with him, in the course thereof; and this is so, for the public good. Duties thus imposed are not the subject of contract. They exist without it, and cannot be dispensed with by it The violation of such a duty is a tort. The law declares that it is the. duty of a public carrier of passengers to use the highest degree of care, to insure their safety. Why was not this left to be settled by the contract of the carrier and passenger? Certainly for no other reason than that the employment itself was of such a nature as to make it a matter of public concern. None could be of greater public concern, at the present day, than these employments by which men, women and children are transported by millions, by agencies of a most dangerous character, and with a speed heretofore unknown. As said in R'y Co. v. Derby: "This duty does not result alone from the consideration paid. It is imposed by the law, even where the

service is gratuitous. The confidence induced by the undertaking of any service for another, is a sufficient legal consideration to create a duty in the performance of it." Railroad Co. v. Weir, 37 Mich. 115.

It has been held, in many cases, that the payment of the consideration which the law permits the carrier to demand and to receive, is not necessary to the imposition of the duty of the carrier to use that degree of care necessary where full consideration is paid, and that a failure to use such care in reference to a passenger not paying such compensation, fixes upon the carrier a liability which he cannot avoid by contract.

In accordance with this view, it has been held, in many cases, that the duty thus imposed cannot be avoided by contract, in that class of cases in which persons travel on what are known as "drovers' passes." Railroad v. Lockwood, 17 Wallace 357; Railroad Co. v. Henderson, 51 Pa. St. 331; Railway Co. v. Selby, 47 Ind. 471; Flint v. Railroad Co., 1 Houston 469; Railroad Co v. Curran, 19 Ohio St. 1.

Any rule founded on the character or adequacy of the consideration on which the carrier's undertaking is assured, it seems to us, ignores the public character of the carrier's employment, as well as all duty resulting therefrom. The foundation of the rule which forbids such contracts as that relied on in this case is admirably well stated in the opinion of the supreme court of the United States, by Justice Bradley, from which we make the following extracts:

"In regulating the public establishment of common carriers, the great object of the law was to secure the utmost care and diligence in the performance of their important duties—an object essential to the welfare of every civilized community; hence, the common law rule which charged the common carrier as an insurer. Why charge him as such? Plainly, for the purpose of raising the most stringent motive for the exercise of carefulness and fidelity in his trust. In regard to passengers, the highest degree of carefulness and diligence is expressly exacted. In the one case, the securing of the most exact diligence and fidelity underlies the law, and is the reason for it; in the other, it is directly and absolutely prescribed by the law. It is obvious, therefore, that if a carrier stipulates not to be bound by the exercise of care and diligence, but to be at liberty to indulge in the contrary, he seeks to put off the essential duties of his employment. And to assert that he may do so, seems almost a contradiction in terms."

"Now, to what avail does the law attach these essential duties to the employment of the common carrier, if they may be waived in respect to his agents and servants, especially when the carrier is an

artificial being, incapable of acting except by agents and servants? It is carefulness and diligence in performing the service which the law demands, not an abstract carefulness and diligence in proprietors and stockholders who take no active part in the business. To admit such a distinction in the law of common carriers, as the business is now carried on, would be subversive of the very object of the law." Ry. v. Lockwood, 17 Wallace 357. The opinion in that case reviews the cases and discusses the general question with an admirable clearness and fullness.

The dissenting opinions in the New York cases to which we have referred, seem to us unanswerable. The following cases held that the carrier cannot limit his liability, by contract, for injuries resulting from the negligence of its agents: Jacobus v. Ry. Co., 20 Minn. 125; Ry. Co. v. Mundy, 21 Ind. 48; School District v. Ry. Co., 102 Mass. 556; Ry. Co. v. Henderson, 51 Pa. St. 315; Transportation Co. v. Oil and Mining Co., 63 Pa. St. 14; Sagor v. Ry. Co., 31 Me., 228; Express Co. v. Crook, 44 Ala. 469; Maslin v. B. & O. Ry. Co., 14 West Virginia 180; Merchants' Dis. and Trans. Co. v. Cernforth, 3 Col. 281; Ry. Co. v. Stevens, 95 U. S. 658; Ry. Co. v. Sayers, 26 Gratt. 328; Express Co. v. Graham, 26 Ohio St. 598; Rice v. Ry. Co., 63 Mo. 318; Ry. Co. v. Hopkins, 41 Ala. 500; Ry. Co. v. O'Hara, 9 A. and E. Ry. Cases 321.

The rule, its application and foundation, is thus clearly stated by an elementary writer: "We have already seen that an agreement that a carrier shall not be liable for negligence is void, as against the policy of the law. There is no reason why this principle should not apply to cases of free as well as paid carriage. If 'confidence,' as has just been stated, is a sufficient consideration, then no passage voluntarily tendered and accepted is gratuitous. But, independently of this, it is against public policy that a person, using the high and dangerous agency of steam, should, in any case, on which the human life depends, act with a diligence less than a good and capable expert should employ in wielding such an agency. If diligence be proportioned to remuneration, steam service would be graded in diligence according to the degree of pay—first-class diligence for first-class cars; second-class diligence for second-class cars; minimum diligence to those who pay but little, or do not pay at all. But the law knows no such gradations. When the work is undertaken, then, so far as safety is concerned, the same precautions must be taken for all who are permitted to take passage." Wharton on Negligence, 589-592, 641, and cases cited in notes.

This rule is wholesome, is demanded by the nature of the employ-

ment, and embraces a policy which no state having a due regard for the safety and lives of its people can abandon; for it discourages negligence, by holding the carrier to strict accountability, and imposes upon him no responsibility which he does not voluntarily assume when he engages in such employment. It is simple, and discards all fine discriminations in regard to degrees of negligence and grades of agents, in determining liability and right to recover actual damages.

The charge of the court below was correct, and the judgment must be affirmed.

AFFIRMED.

[Opinion delivered March 12, 1886.]