DORA WHEELER, Appellant, *v.* OCEANIC STEAM NAVIGATION COMPANY, Respondent.

*Court of Appeals, Jan. 13, 1891.*

Rev'g 52 Hun, '75.

1. *Carriers. Liability.*—The provision of § 4281 of United States Revised Statutes, while it relieves the ship owner from liability as carrier, when the property has not been entered on the manifest, does not affect his liability as bailee for hire.

2. *Same.*—Under this statute, such owner is liable, as bailee, where it is shown that the property was lost through his negligence.

See note at end of case.

3. *Same.*—Non-delivery at the port of destination is *prima facie* evidence of negligence.

4. *Same.*—*It seems* that a carrier may refuse to carry property, such as is specified in said statute, unless its value and character are disclosed and entered upon the ship's manifest.

Appeal from a judgment of the general term of the supreme court, entered upon an order affirming a judgment in favor of defendant, entered upon an order granting a motion at the trial at circuit to dismiss the complaint.

The facts, so far as material, are stated in the opinion.

*Boudinot Keith,* for appellant.

*Lawrence Godkin,* for respondent.

FINCH, J.—Section 4281, of the Revised Statutes of the United States, provides, in substance, that if any shipper of certain articles which are specifically named, and among which are " pictures," shall lade the same as freight or baggage on any vessel, without at the time giving notice to its owner, master or agent, of the true character and value of

the property shipped, and having the same entered upon the bill of lading, " the master and owner of such ship or vessel shall not be liable as carriers thereof in any form or manner." The protection of this statute has been successfully invoked by the defendant company against the loss which forms the subject of this action.

Dora Wheeler, the plaintiff, and described in the evidence as an artist of established reputation, returning home from a foreign journey, took passage on the steamer Germanic, and in addition to her ordinary baggage delivered to the ship for transportation a package of valuable portraits which she had painted while abroad. These were contained in a box of white wood, with iron hinges and corner clasps, and closed by a lock. The package itself, besides the address, was marked " Studio," and its appearance unmistakably indicated something other than and different from the ordinary baggage of a traveler. There was no attempt to deceive the defendant as to its true character, or by artifice or misrepresentation to make it appear to be personal baggage, or shield it as such from proper freight charges.

Nevertheless, it was not entered upon the bill of lading with notice of its character and value, or in any manner whatever, but was put in the hold of the vessel for transportation to New York. The voyage was unattended by either accident or delay, and it is reasonably certain that the package came in the ship to its port of destination. Arrived at its wharf, the trunks and packages of the passengers were landed upon the dock, each individual being left to find and collect together his own. The package in question was never delivered to its owner, but was probably misdelivered, or permitted to be taken by one having no right to receive it. For the damages thus sustained the plaintiff brought this action, and has been defeated upon a construction of the statute which is challenged upon this appeal.

That construction is a very broad one. It denies liability " in any form or manner." It relieves the ship-owner from

all responsibility where the baggage or goods have not been entered upon the manifest. It involves a ruling that he may accept the property for transportation, and yet owe no duty, even of the slightest care, to its owner, who finds that he has put his baggage in a lottery, and must take the chances of its restoration. The goods may be delivered to the wrong person through gross carelessness, or be ruined by inexcusable negligence, or even stolen or converted by the crew, and yet the ship-owner is not liable " in any form or manner; " and such, it is claimed, is both the language and purport of the statute. Its provisions meet the shipper at the port of destination, and place him at the mercy of the owner or master of the vessel. If the property is restored, it is through the grace of those in command; if it is not delivered, they are not liable for its loss " in any form or manner." Such construction goes far beyond the due protection of those engaged in the transportation of property, and, instead of merely moderating or lessening their liability, sweeps it all away, and leaves the baggage and property of the passenger protected by no duty and guarded by no liability.

It is quite true that even upon this construction the courts would hesitate and halt before a proven theft or an actual conversion, on the ground that the fact and opportunity of transportation did not change the nature or character of such positive wrongs ; but there would still remain a gap to be spanned between the actual wrong-doer and the defendant company, and, when safely crossed, as it well might be, the relief would be of but little value, since ordinarily the shipper can neither know nor prove the cause of the loss, especially where motive exists for its concealment. If, therefore, the statute admits of a more just construction, and one which, while giving needed protection to the ship-owner, preserves some reasonable duty to the shipper or to the passenger, I think we should not hesitate to adopt it.

The construction which has prevailed eliminates from the

statute the words, " as carrier thereof," and gives them no force or meaning. They become wholly superfluous. To us they appear to be vital to the true interpretation. The liability of the carrier as such was well understood by the framers of the statute. It had long been settled so that no one could mistake it. By force of his public employment he became an insurer of the property entrusted to his care, and liable for its loss irrespective of the cause unless from the act of God or the public enemy. But involved in this greater liability and absorbed by it was a lesser liability as bailee for hire ; of no consequence while the greater liability existed, but surviving the destruction of that, so that when the carrier ceased to be liable as carrier he yet remained liable as bailee.

In Dorr v. N. J. St. Nav. Co., 4 Sandf. 145, the doctrine was thus expressed: " A common carrier has in truth two distinct liabilities ; the one for losses by accident or mistake, where he is liable by the custom of the realm or the common law as an insurer; the other for losses by default or negligence, where he is answerable as an ordinary bailee," and the language was cited by the federal court in Railroad Co. v. Lockwood, 17 Wall. 363, and the doctrine approved in Dorr v N. Jersey St. Nav. Co., 11 N. Y. 485, where it was held that the carrier might by special agreement strip himself of that character, and so become as to that particular transaction an ordinary bailee and private carrier for hire. In Lamb v. Camden & A. R. R. Co., 46 N. Y. 278, GROVER, J., said : " In considering this question it must be borne in mind, that it has already been determined that the defendant was exonerated from all liability as carrier for a loss caused by the destruction of the cotton by fire, by an express provision of the contract in pursuance of which it transported the cotton. Relieved of this responsibility, it was liable only, in case it was destroyed, as bailee for hire ; and it is undisputed that such a bailee is liable for the loss of the property only in cases where the loss is the result of his negligence."

These cases show that the liability for negligence as bailee survives even when by special contract the carrier has thrown off his liability as such; and the courts of this state have exhibited a very decided purpose to retain and enforce that liability wherever it is possible. Even that may be thrown off by force of a special agreement, but we have refused to permit any general words to accomplish such result, and have insisted that, where the carrier seeks to contract against the consequences of his own negligence, he must say so openly and plainly so as not to be in the slightest degree misunderstood, and is not at liberty to hide the stipulation away under any form of words however broad or formidable. Nicholas *v*. N. Y. C. & H. R. R. R. Co., 89 N. Y. 372.

But what the carrier and his customer might accomplish by special agreement, congress could effect by statute in the absence of such agreement; but must necessarily leave the lesser liability of bailee unaffected if it merely removes the liability *as carrier*, and does not by clear and definite language, indicate its purpose to go further. So much, and no more than that, the section under consideration accomplished, for it distinctly removes the liability *as carrier* without touching that as bailee. We are bound to assume that the word "carrier" was used in its recognized legal sense, and not in some loose or careless or merely colloquial way; and that, especially, because it occurs in connection with the idea of liability, and the phrase "liable as carrier" can only mean the liability attached by law to that public employment.

Nor is this construction affected by the added words, "in any form or manner." They are not used disjunctively, and so as to constitute a separate command, but qualify the expression "shall not be liable as carrier thereof;" the full force of the words being that the liability *as carrier* shall not exist in any form of action or by any manner of procedure. In Atlantic Mut Ins. Co. *v*. McLoon, 48 Barb., 28, it was held that the carrier's liability assumed two different

forms, and that he might be proceeded against either in tort for a violation of his public duty, or in contract for a breach of his implied agreement to carry and deliver safely. And so the statute deemed it prudent, in relieving the carrier from liability, to add " in any form or manner; " that is, by any form or mode of action or proceeding whatever.

We are further referred to the case of Hinton *v.* Dibbin, 2 Ad. & Ell., N. S., 646, in which it was held under a similar statute, 1 Wm. IV., chap. 68, that the carrier could not be held liable even for gross negligence, but that decision was founded upon an enactment from which the words " liable *as carrier* " were conspicuously absent. That act freed the shipowner from any liability for the loss, and even under such provision, where the property was not lost, but merely delayed in its transit, damages for the consequent injury resulting from negligence could probably be recovered.

It follows that the nonsuit in this case was erroneous. The plaintiff in her complaint alleged negligence and the facts which she proved *prima facie* established it. The nondelivery at the port of destination is presumptive evidence of such negligence. Canfield *v.* B. & O. R. R. Co., 93 N. Y. 538. In addition it was shown that the vessel stopped nowhere until the port of destination was reached and then the baggage was placed upon the dock with little of order or control and leaving the passengers to find their own in the consequent confusion. And so a case was made which should have gone to the jury.

A possible criticism upon this view of the statute is quite likely at this point to suggest itself. One may inquire of what value to the ship-owner is the enactment when after all he is left liable for the loss, and responsible whether the property is entered upon the ship's manifest or not? The inquiry goes to the root of the matter and its answer will further test the justice and propriety of our interpretation. Under it I think the ship-owner is protected as far as he should be, and in two very important respects.

*First.* The statute leaves him at liberty to refuse to carry the property at all unless its value and character are disclosed and entered upon the ship's manifest. The law leaves him master of the situation and able, if he shall please, to enforce obedience to it. As carrier he could not refuse, but since he does not become such unless the proper entry is made he may refuse until then to transport the property at all. As a simple bailee he may take the property or decline it. If now he chooses to take it in that character the act is voluntary; there is no compulsion about it; and on what principle shall we say that because he so takes it he shall be absolved from all care over it, at liberty to be as negligent as he pleases and the only bailee in the world having that lawless control?

*Second.* If a loss occurs he is no longer liable as an insurer. The door to a just defense is opened before him, and the burden of proof to establish negligence is shifted to his adversary. If the ship-owner has in truth exercised due care he may show it and go discharged. If he has not exercised it, if he has been negligent and careless, he ought to respond in damages and must do so.

It was suggested by the general term in aid of their construction that one reason for the enactment was the interest which the government had in procuring entries upon the vessel's manifest of all property shipped. If that be true the construction of the courts below tends very distinctly to defeat such purpose; for while it makes it for the interest of the passenger to enter his baggage or parcel upon the bills of lading, it leaves him liable to pay possible charges for freight and so makes his action doubtful; while on the other hand it becomes at once the strong and paramount interest of the ship-owner and master to keep all baggage and property carried as such off of the ship's manifest so far as possible; since, if it goes on they become liable as insurers, but if it does not they incur no responsibility, not even that of private bailees. Passengers are little likely to be

versed in the shipping laws; owners are sure to be; and the traveler who sought to put his baggage upon the manifest might find it no easy matter to accomplish against the will of ship-owners and officers. In the haste and confusion of departure they could easily postpone or avoid attention to the subject, or repel the passenger with the insolence of command. All baggage and parcels for which no separate freight was to be charged would be kept off of the manifest so far as owners and officers could effect that result.

It may be that congress might go as far as the English statute has gone, but our judgment is that it has neither done so, nor intended to do so; and that it has stopped short of a rule which would protect master and ship-owner from the consequences of their own negligence. That the federal court has held is against public policy and, presumably, would not encourage a construction in such direction where any other was permissible. It follows that the plaintiff was erroneously defeated, and should have an opportunity to present her case to a jury.

The judgment should be reversed and a new trial granted, costs to abide the event.

All concur.

NOTE ON "CARRIER'S EXEMPTION FROM LIABILITY."

The following position appeared to be settled in regard to the duties and responsibilities of railroad corporations engaged in the transportation of persons and property in this state:

(1.) In regard to the transportation of goods, they are subject to the absolute responsibility which rests upon common carriers, and are insurers of the safe carriage and delivery of the goods, except against accidents towards the production of which no human agency has contributed.

(2.) In the transportation of living animals, they are relieved from responsibility for such injuries as occur in consequence of the vitality of the freight, so far as such injury could not, by the exercise of diligence and care, be prevented. In other respects, their responsibility in regard to stock is the same as rests upon them in regard to goods. Clark *v.* Rochester & S. R. R. Co., 14 N. Y. 570.

(3.) In regard to the transportation of passengers, they are not in any

respect insurers, but are answerable for any injuries, to their passengers, against which the utmost skill and foresight could guard. Bowen *v.* N. Y. C. R. R. Co., 18 N. Y. 408.

(4.) This responsibility embraces not only any want of care and foresight on the part of the immediate agents of the corporation, but also any defects arising from want of care or skill in the manufacture of the machinery or materials used in the structure or operation of the road whether discoverable or not by any exercise of care and skill on the part of the immediate agents of the road. Hegeman *v.* Western R. R. Co., 13 N. Y. 9.

(5.) The companies cannot limit their responsibility by any notice, though expressly brought to the knowledge of those whose persons or property they carry. But they may secure such limitations by express contract with those persons. Dorr *v.* N. J. S. N. Co., 11 N. Y. 485.

(6.) Such limitation may be agreed upon in relation to the safety of property under any circumstances, whether carried gratuitously or for reward ; and in relation to the safety of persons, when they are carried gratuitously. Wells *v.* N. Y. C. R. R. Co., 24 N. Y. 181; Perkins *v.* Same, Id. 196.

(7.) In such contracts, the companies may lawfully be relieved from all responsibility for the negligence or misconduct of their subordinate servants or agents. Id.

(8.) Whenever the companies are authorized to relieve themselves by contract from liability for the negligence of their agents, no distinction is made in regard to the degrees of negligence against which they may stipulate. Id. Wells *v.* S. N. Co., 8 N. Y. 375; Bissell *v.* N. Y. C. R. R. Co., 25 N. Y. 442.

Since the principle is established that railroads may, by contract, relieve themselves from the negligence of their servants in the carrying of passengers when carried gratuitously, no rule of law or public policy exists to prevent their doing it on any other terms which may be agreed upon between them and their passengers, and which shall furnish a consideration to the passengers for the risks which they assume. Bissell *v.* N. Y. C. R. R. Co., *ante*.

If there was no limitation to the power of railroad companies in making such contracts, there would be great danger of public inconvenience in the establishment of such rule. But even then, after the law is settled that such companies can protect themselves against liability by express contract, the propriety of attempting to prescribe, by judicial decision, how great the consideration should be to render such contract valid, is doubtful. To hold that the carrier and the passengers may lawfully agree that the former shall be relieved from the risk, and the latter assume it, and then to add that no such agreement shall be valid unless the carrier gives to the passenger, for assuming the risk, the full compensation which the law allows it to receive for risk and transportation united, does not seem to be reasonable. Id. If the person in fact pays as a passenger the full fare allowed by law, or the usual fare, if less than that allowed by law, without reduction on account of his engagement to assume such risk, the agreement

would be without consideration, and not binding upon him or his representatives. Id.

After the principle is established that parties may lawfully enter into contracts of this nature, there is no limit to the extent and variety of modification which may be given to them. Bissell *v.* N. Y. C. R. R. Co., *ante.* The passenger may assume all risks arising from the condition of the track, locomotive, cars, or all risks from the negligence of the agents. There is no danger which the party may encounter, resulting from the journey, of which he may not assume the responsibility, and he may assume all or any portion of it. Id. This, of course, refers to actual contract, and not to attempted limitations of the carrier's responsibility, by means of the endorsements upon tickets, not assented to by the passengers who receive them. Id.

A contract by a passenger, to take the risk of injury to his person in consideration of riding free, is a valid contract. Bissell *v.* N. Y. C. R. R. Co., *ante ;* Wells *v.* N. Y. C. R. R. Co., *ante ;* Perkins *v.* Same, *ante.*

It is competent for a carrier and shipper, by contract, to modify the responsibility cast upon common carriers by the common law. Park *v.* Preston, 108 N. Y. 434. Carriers by water are, by the rule of the common law, exempt from responsibility for losses from such perils of the sea as come within the definition of the phrase, " Act of God," and this exception exists though the contract is silent upon the subject. Further exceptions have been introduced by statute in England and in this country. It cannot be questioned that, in the absence of evidence to the contrary, it is to be assumed that goods accepted by a carrier for transportation are taken under the responsibility cast upon carriers by the common law, or by the common law as modified by statute. Id. If they are lost, under circumstances which render the carrier liable by the general rule of law, the carrier must respond, unless it can show that there was a special acceptance, equivalent to a contract, which exempts it from the ordinary liability of common carriers in the particular case. Id.; Dorr *v.* N. J. S. N. Co., *ante ;* Blossom *v.* Dodd, 43 Id. 264; Madan *v.* Sherard, 73 Id. 330.

There is no law regulating the amount of freight which railroad companies may properly charge. They are bound to carry such property as may be offered to them for transportation, upon due payment of freight. They must carry for all upon equal terms charging one no more than another for freight or property delivered under like circumstances. But they are not bound to carry all kinds of property for the same freight. Nelson *v.* H. R. R. R. Co., 48 N. Y. 498. They may charge ordinary rates for some kinds of property exposed in the carriage to ordinary hazards, and extra rates for property exposed to extra hazards. As railroad companies are bound to carry without any contract limiting their liability, their mere agreement to carry does not furnish a consideration for the agreement to limit their liability; nor does their agreement to carry for the price which they would be authorized to charge in case their liability was not limited. Bissell *v.* N. Y. C. R. R. Co., *ante.* But it is a sufficient consideration, if they agree to carry for a reduced compensation, because their liability is

limited.   In York Company v. Central R. R., 3 Wall. 107, it was held that,
where there was an agreement limiting the liability of the carrier, it would
be presumed, in the absence of proof to the contrary, that it was upon the
consideration of a reduced compensation for the carriage.   Such a presump-
tion is not unreasonable.   Where the consideration for the agreement to
limit the carrier's liability is the agreement to carry for a reduced compen-
sation, the contract is a valid binding contract between the shipper and the
carrier.   Nelson v. H. R. R. R. Co., ante.

The courts which have held contracts exempting a carrier from liability
for the negligence of its servants to be void, have generally treated the
elements of consideration as immaterial.   See Bissell v. N. Y. C. R. R. Co.,
ante; rev'g 29 Barb. 602.   On the other hand, in Orange County Bank v.
Brown, 9 Wend. 85, some of the old cases are cited with apparent approval,
in which it is said that the carrier's liability depends upon the consideration
paid him.   But in Carroll v. Staten I. R. R. Co., 58 N. Y. 126, the court said
that the duty imposed by law upon the carrier of passengers to carry them
safely, as far as human skill and foresight can go, exists independently of
contract.   For a negligent injury to a passenger, an action lies against the
carrier, though there is no contract, and the service he has rendered is gra-
tuitous.   Whether the action is brought upon contract or for failure to per-
form it, the liability is the same.

*Pass.*—The authority of an agent of the government to contract on its
behalf for the transportation of the mails is limited by the provisions of the
statute, and no power is thereby given to stipulate for any advantage to it,
as a consideration for exemption to a railroad corporation of liability from
causes of action accruing through its negligence.   Seybolt v. N. Y. L. E. &
W. R. R. Co., 95 N. Y. 562.   Even though there has been an express con-
tract between the government and the carrier, providing for the exemption
in question, it must be void, in respect to such a provision, for want of
authority in the officer, representing the government to make it.   Such
officer, acting under the power contained in the statute, cannot lawfully
represent the government, in making such a contract.   Nor can he repre-
sent the person subjected to the risk of such negligence, without express
authority conferred upon him by such person.   Id.

An individual transported over the route of a carrier of passengers may
debar himself, by a contract founded upon a sufficient consideration, from
any claim to damages for injuries to his person or property occasioned by
the negligence of such corporation during the course of transportation.
Such a contract, to be binding upon a party, must be made by him, or by
some one authorized to act in his behalf.   Such authority may sometimes
be implied from certain contract relations existing between the parties, as
between master and servant, or principal and agent.   But no such implica-
tion can arise, when the relations of the parties are regulated and defined
by statute.   Id.; Stinson v. N. Y. C. R. R. Co., 32 N. Y. 333; Blair v. Erie
R. Co., 66 Id. 313.

The principle involved in the cases holding that a party, making a con-
tract with a common carrier, who voluntarily accepts a ticket or receipt

Note on " Carrier's Exemption from Liability."

purporting to contain the conditions of the contract for the transportation of persons or property, is deemed thereby to have assented to such conditions, has no application to the case of mail agent riding in postal cars in charge of the mails. Seybolt v. N. Y. L. E. & W. R. R. Co., *ante*. These cases proceed upon the assumption that the rights of the parties are founded upon an express contract, assented to by the respective contracting parties, and the presumed intent and understanding of the parties that such contract was made and perfected, at the time of the payment of the consideration, and the delivery of a voucher therefor, stating the conditions upon which it was received. The absolute duty of providing a car for the transportation of the mail, and of carrying such mail and the persons in charge of it, is imposed by the statute. An imperative obligation for its performance rests upon the corporation accepting the public mails for the purpose of transportation. An attempt by such a corporation to impose any other conditions upon the performance of this service than those provided by the statute, would be illegal and ineffectual, to shield it from the consequences of its wrongful acts. Id.

A person, to whom is secured an absolute statutory right to transportation over a railroad, does not forfeit his right to damages for an injury inflicted upon him through the negligence of such corporation, by the involuntary acceptance of a voucher containing provisions, intended by the corporation, to exempt it from liability for its negligence, although the person receiving it supposed it was intended solely to facilitate the enjoyment of his right of transportation. Id.

A mail agent's acceptance of a pass under such circumstances does not indicate an intention to assent to the provisions therein contained. Even if it might be so construed, the want of a consideration for such an agreement would render it *nudum pactum*. The promise by one party to do that which he is already under a legal obligation to perform, has frequently been held to be insufficient as a consideration to support a contract. Id. Vanderbilt v. Schreyer, 91 N. Y. 392.

Where there is no express exemption provided by contract, a railroad company is liable for the consequences of its own or its servants' negligence to persons traveling upon its train, as messengers or agents of an express company to the same extent as to other passengers, though no charge is made for their fare. Blair v. Erie R. Co., *ante*. One temporarily supplying the place of an express messenger stands in the same position with him, and is entitled to the same protection. Id. In this case, defendant entered into a contract with the United States Express Company for the transportation of freight, by which it agreed, among other things, to transport, free of charge, the money-safes, contents and messengers of the express company, but assumed no liabilities whatsoever in the matter. Subsequently another contract, was made which, by its term, adopted the conditions of the former contract save as modified. It provided that defendant should assume the usual risks taken by railroads as to freight, except that it " shall not assume any risks for loss on any money, bank-notes, bonds, gold, bullion or jewelry packages, and for which, with the express company's

safe and messenger, no charge for carriage is to be made." It was held, in an action for the alleged negligent killing of an express messenger, that the clause referred to in the first contract was abrogated by that of the subsequent one ; and that reading them both together there was no exemption of defendant from liability. None of the cases which hold that the defendant is exonerated under a special contract, affect a contract of the character of the one above presented.

In Smith *v.* N. Y. C. R. R. Co., 24 N. Y. 222, the contract was, that " persons riding free to take charge of the stock, do so at their own risk of personal injury from whatever cause." The ticket also provided that such person takes " all the responsibility as to the injury of himself and stock."

In Bissell *v.* Same, *ante*, the contract was the same as in the last cited case, and on the ticket was an agreement that the company should not be liable under any circumstances, "whether of negligence of their agents or otherwise," for any injury to person or stock.

In Poucher *v.* N. Y. C. R. R. Co., 49 N. Y. 263, the contract provided against negligence of the defendant or its agents or otherwise. See Stinson *v.* N. Y. C. R. R. Co., *ante*. In each of the cases cited, there was an express provision which evidently guarded against every kind " of personal injury from whatsoever cause," which might perhaps, include such as might arise from negligence. In the absence of language, which can be fairly interpreted as aimed against negligence, the contract is not designed to protect the defendant against its own negligent act. No language, except such as is entirely clear and unmistakable in its terms, will exempt a railroad company from liability from negligence. There is quite a distinction between cases, where damages for injury are expressly provided against, or where the traveler agrees to be carried at his own risk, and those where the contract states generally that the carrier assumes no liability. Blair *v.* Erie R. Co. *ante*.

In Porter *v.* N. Y. L. E. & W. R. R. Co., 59 Hun, 177, plaintiff was riding on a freight train in charge of a car-load of cattle belonging to one Schoonmaker, who shipped them over the defendant's road. In consideration of a reduced rate for transportation and a free pass, Schoonmaker entered into a written contract, in which he released the company from all damages attending the transportation, custody and delivery of the stock, except such as might arise from its fraud or willful misconduct. The plaintiff was employed by Schoonmaker to go in charge of the stock, and he was designated by name in the contract and in the way-bill as in charge free. It was held that such contract related exclusively to the transportation of the live stock and did not release the company from liability for plaintiff's injuries. The plaintiff was not in the eye of the law a gratuitous passenger, but one, with all the rights which that relation towards the company under the law gave him. But such contract, in any view, can have no binding force or legal effect upon the plaintiff. He neither made the contract nor assented to it, and he made no agreement to assume any risk, and the company could not avoid responsibility to him

by any contract with Schoonmaker. Such a contract to be obligatory upon him must have been made by him or some one in his behalf.

In Steiger *v.* Erie R. Co., 5 Hun, 345, an action was brought for damages alleged to have been done to a car-load of cattle shipped by plaintiff from Buffalo to Elmira on defendant's road. At the shipment, in consideration of low freight, the plaintiff signed a contract by which he assumed all risk of loss, damage or injury to the animals, from delay of transportation or delivery, and released the defendant therefrom. The plaintiff also agreed to unload such stock at his own risk. Defendant gave plaintiff a stock-drover's pass, in which it was stated that he was in charge of the stock, and that conductors of that stock train should pass him on defendant's road between Buffalo and Elmira. The route by way of Hornellsville was usually taken by stock trains. This train was started by that route. By reason of a strike among defendant's men at Hornellsville, the train was recalled and sent by way of Avon, reached Elmira some five hours later than it would if on time by the former route. Plaintiff went to Hornellsville by express train, by consent of defendant, and waited for the stock train, until he learned that it had gone by way of Avon. He then went to Attica and endeavored, but in vain, to overtake the stock train, getting to Elmira about 3 P. M. of the day on which the stock arrived at eight A. M.

It was held that defendant had by contract limited its liability in respect to the property carried. See Cragin *v.* N. Y. C. R. R. Co., 51 N. Y. 61 ; Penn *v.* Buffalo & E. R. R. Co., 49 Id. 204 ; Dorr *v.* New Jersey S. N. Co., *ante.* The circumstances which had arisen, made it necessary to change the direction of the train. The defendant would otherwise have been responsible for the consequences of the gross neglect of sending this property into great danger. Johnson *v.* N. Y. C. R. R. Co., 36 N. Y. 610. The defendant's duty was ended when the cattle were transported to Elmira. The plaintiff was bound to take notice of their delivery there and to take care of and unload them. Steiger *v.* Erie R. R. Co., *ante.*

In an action against a common carrier for conversion, a clause in a shipping receipt containing the condition that " in no event shall the company be liable for any loss or damage, unless the claim therefor shall be presented to them in writing within thirty days after the date of receipt," is available to the carrier. Hirshberg *v.* Dinsmore, 67 How. 103 ; 19 W. Dig. 497. The presentation of claims for loss within the time specified is a condition precedent to the recovery, and, unless complied with, the action against the carrier cannot be sustained. *Id.*

In Poucher *v.* N. Y. C. R. R. Co., *ante,* an action was brought to recover damages for injuries alleged to have been sustained by the negligence of defendant's servant. Plaintiff loaded on board defendant's cars, at Newark, a car-load of sheep, to be transported to Albany under a written contract. By this contract, it was, among other things, agreed that " he should go or send some person or persons in the same train with the stock to take charge of the same, who should be carried free of charge, and who should take all the risk of personal injury from whatever cause, whether of negli-

gence of defendant, its agents, or otherwise." He also at the same
time received a pass, which provided that its acceptance should be con-
sidered "a waiver of all claims against the company for personal injury
received when on the above train." After the sheep were loaded, the
plaintiff, in passing the tender to the engine of the train, was struck upon
the foot by a large stick of wood thrown from the tender by the engineer,
and was seriously injured.

It was held that, under the contract between plaintiff and the defendant,
the latter was exempted from liability for the injury sustained by the
plaintiff through the negligence of its servants. It was not necessary, to
bring the plaintiff within the operation of this stipulation, that he should
have been actually riding at the time of his injury. The train had been
formed and was about to start. The plaintiff was there, under the contract,
as a passenger, furnished with a pass, entitling him to ride free, and was
coming from the performance of the duties contemplated by his contract.
These features did not exist in the case of Stinson *v.* N. Y. C. R. R. Co.,
*ante.* The decision in that case commented upon their absence. Plaint-
iff was fairly within the stipulation contained in the contract. Poucher
*v.* N. Y. C. R. R. Co., *ante* ; Northrup *v.* Railroad Pass. A. Co., 43 N. Y.
516.

In Wilson *v.* N. Y. C. & H. R. R. Co., 97 N. Y. 87, plaintiff shipped two
horses by defendant's road under a contract, by which he released the com-
pany from liability for damages resulting from the negligence of its ser-
vants, or which should be occasioned by the insecurity of its cars. The
horses were transported in a grain car. It was out of repair and, while
sufficient for the use for which it was intended, was unsafe for the trans-
·portation of live stock. One of the horses, in consequence of such defects,
was injured. It was not shown but that other safe and secure cars were
provided by defendant and were on hand ready for use, so that the injury
might have been caused by carelessness on the part of its servants in
selecting an insecure car. It was held, in an action to recover damages,
that the only negligence shown was that of defendant's servants, from the
consequences of which it was released by the contract. It seems that the
language of such a release, where it is included in the same clause and
connected with releases from the consequences of other causes of injury
which could only occur during the process of shipment and transportation,
is satisfied by limiting it to the negligence of defendant's servants in and
about the transportation, and does not extend to a negligent omission to
furnish proper cars. Id.

*Stock.*—In Wilson *v.* N. Y. C. & H. R. R. Co., 27 Hun, 149, plaintiff
shipped two horses by the defendant's road from New York to Ogdensburg.
He signed an agreement which, after reciting that the company transported
live stock at reduced rates upon the shipper's assuming certain risks,
provided that the defendant was thereby released "from all liability for
injuries which the animals, or either of them, may receive in consequence
of the negligence of said company's servants or in consequence of
insecurity of cars." The door of the car in which the horses were

transported was defective, and one of the horses fell or got out and was hurt. And it was held that the company was not liable for the damages occasioned thereby.

In Sherman v. Inman S. Co., 26 Hun, 107, plaintiffs entered into a contract with the defendant, which was engaged in carrying freight and passengers for hire in steamers by regular trips between New York and Liverpool. B? this contract, they were entitled to ship meat in a space assigned to them, and in which they had constructed a refrigerator. They paid therefor a certain sum for each cubical ton of the space so assigned to them. An agent was sent with the ship, whose duty it was to care for and preserve the meat. The plaintiff shipped a quantity of beef and mutton in pursuance of the said contract, but the mutton was omitted from the terms of the bill of lading taken therefor. It was held that the omission of the mutton from the bill of lading did not relieve the defendant from liability for a failure to safely carry and deliver it, as it was placed in the refrigerator under the authority of the contract made with the plaintiff; that the liability of the defendant for property intrusted to its care was substantially that of a common carrier; that, by the terms of the bill of lading, it was exonerated from such loss as might result from the decay of the property; see Clark v. Barnwell, 12 How. U. S. 272; Lamb v. Camden & A. R. R. Co., 46 N. Y. 271; Mynard v. Syracuse, B. & N. Y. R. R. Co., 71 Id. 180; Peck v. Weeks, 33 Conn. 145; King v. Shepherd, 3 Story, 349; and that the defendant was thereby relieved from such loss only as might be occasioned by the tendency of the property, in and of itself, to decay, and not from such as might be occasioned by its own negligent acts or misconduct.

It seems that the owner of cattle, transported for hire on a railroad, and who goes along in charge of them, under a contract that the persons riding free to take charge of the stock do so at their own risk of personal injury from whatever cause, is not to be regarded as a gratuitous passenger. Smith v. N. Y. C. R. R. Co., 24 N. Y. 222. In this case, it was held that a carrier of passengers by railroad cannot contract with a person, offering to be carried, against the consequences which the law attaches to his negligence. It is constituted by statute a carrier of passengers, absolutely required to transport them, empowered to regulate the time and manner in which they shall be transported, and made liable for any damages occasioned by its neglect of duty. It cannot contract to relieve itself from this liability, or to assume any other character than that given to it by the statute. It cannot by agreement with the passenger, exempt itself from the performance of duties imposed or required by the law for the safety of the citizens.

Courts of law should enforce to common law obligation of common carriers with rigor, and should modify them only with reluctance and upon necessity. Jennings v. Grand T. R. R. Co., 52 Hun, 227; Express Co. v. Caldwell, 21 Wall. 266.

*Exemption from liability for own negligence.*—A common law carrier is subject to two distinct classes of liabilities—one, where he is liable as an insurer without fault on his part; the other, as an ordinary bailee for hire,

when he is liable for default in not exercising proper care and diligence; or, in other words, for negligence. General words of exemption, "from whatever cause arising," may well be satisfied by limiting them to such extraordinary liability as carriers are under without fault or negligence on their part. Mynard *v.* Syracuse, B. & N. Y. R. R. Co., *ante.*

When general words may operate without including the negligence of the carrier or its servants, it will not be presumed that they were intended to include it. Every presumption is against an intention to contract for immunity for not exercising ordinary diligence in the transaction of any business, and hence the rule is, that contracts will not be so construed, unless expressed in unequivocal terms. Id.; N. J. S. N. Co., *v.* Merchants' Bank, 6 How. U. S. 344; Alexander *v.* Greene, 7 Hill, 533; Wells *v.* Steam N. Co., *ante*; Steinweg *v.* Erie R. Co., 43 N. Y. 123; Magnin *v.* Dinsmore, 56 N. Y. 168. In each of these cases, the language of the contract was sufficiently broad to include losses occasioned by ordinary or gross negligence, but the doctrine was repeated that, if the carrier asks for immunity for his wrongful acts, it must be expressed, and that general words will not be deemed to have been intended to relieve him from the consequences of such acts.

These authorities are directly in point, and they accord with a wise public policy, by which courts should be guided in the construction of contracts designed to relieve common carriers from obligations to exercise care and diligence in the prosecution of their business, which the law imposes upon ordinary bailees for hire, engaged in private business. Mynard *v.* Syracuse, B. & N. Y. R. R. Co., *ante.* In the case of Lockwood *v.* R. R. Co., 17 Wall. 357, it was decided that a common carrier cannot lawfully stipulate for exemption from responsibility for the negligence of itself or its servants. But the right thus to stipulate has been so repeatedly affirmed by the court of appeals, that the question cannot with propriety be regarded as an open one in this state. Mynard *v.* Syracuse, B. & N. Y. R. R. Co., *ante*; Wells *v.* Steam Navigation Co., *ante*; Dorr *v.* N. J. Steam Nav. Co., *ante*; Wells *v.* N. Y. C. R. R. Co., *ante*; Bissell *v.* Same, *ante*; Guillaume *v.* H. & A. P. Co., 42 Id. 212; Cragin *v.* N. Y.. C. R. R. Co., *ante*; A review of the cases cited by reports of this state shows that, though they have carried the power of the common carrier to make special contracts to the extent of enabling it to exonerate itself from the effects of even gross negligence, yet that this effect has never been given to a contract, general in its terms. Mynard *v.* Syracuse, B. & N. Y. R. R. Co., *ante.* The shipper, in most cases, from motives of convenience, necessity or apprehended injury, feels obliged to accept the terms proposed by the carrier, and thus practically the contract is made by one party only. For this reason, the carrier should not be relieved from the consequences of his own wrongful acts under general words or by implication.

The common law liabilities of carriers attach to the carriers of animals, modified only so far as the cause of damage for which recompense is sought, is a consequence of the conduct or propensity of the animals undertaken to be carried. Id.

Note on " Carrier's Exemption from Liability."

A shipping contract, made by a common carrier for the carriage of live stock, whereby the shipper, in consideration of a reduced rate for the carriage, agreed " to release and discharge the carrier from all claims, demands and liabilities of every kind whatsoever, for, or on account of, or connected with any damage or injury to, or the loss of said stock or any portion thereof, from whatsoever causes arising," does not operate to exempt the carrier from liability from loss occasioned by its own negligence. Mynard *v.* Syracuse B. & N. Y. R. R. Co., *ante ;* Nicholas *v.* N. Y. C. & H. R. R. R. Co., 89 Id. 370. The words " from whatsoever cause arising," are as broad and comprehensive as possible. But the court refused to construe them as covering a loss arising from the negligence of the carrier, not because the words, in their ordinary signification and interpretation, did not include a loss of this character, but because it is a part of the rule, which in this state allows a common carrier to contract against its liability for negligence, that the contract must, in terms and expressly exempt the carrier from liability on this account. Id.

The practice of common carriers making special acceptances, exempting them from their ordinary responsibility, though contrary to the policy of the common law, liable to abuse, and productive of inconvenience, has obtained too long to be now questioned. In this state, it has been extended so as to authorize a special acceptance, exempting them from liability for their own negligence. But a contract exempting a bailee for hire from the obligation of care on his part, in respect to the goods in his custody, is, to say the least, unreasonable. Where the law does not go to the extent of making it void on that ground, the qualification that, to have such effect, it must be plainly and distinctly expressed, so that it cannot be misunderstood by the shipper, is so obviously just that it ought not to be relaxed. Nicholas *v.* N. Y. C. & H. R. R. Co., *ante.*

In this case, plaintiff shipped a quantity of fruit trees by defendant's road. The shipping contract, among a great number of special exemptions from liability on the part of the carrier, contained the following, viz. : for " damage occasioned by delays from any cause or from change of weather." The trees were lost by the negligent delay of defendant in the transportation. And it was held, in an action to recover damages, that such a loss was not covered by the exemption, and that defendant was liable.

There is an almost unbroken line of judicial expression, to the effect that general words will not operate to exempt a carrier from liability for his own negligence. Id.; New Jersey S. N. Co. *v.* Merchants' Bank, *ante ;* Alexander *v.* Greene, *ante ;* Wells *v.* Steam N. Co., *ante ;* Magnin *v.* Dinsmore, *ante ;* Mynard *v.* Syracuse, B. & N. Y. R. R. Co., *ante.* In some of the cases cited, reference is made to the circumstance that the contract of exemption then before the court might have effect, without applying it to the case of negligence. But this is referred to as ground for excluding the inference of an intention that this subject was in the minds of the parties to the contract. The cases do not rest upon that circumstance, but upon the broader, more practical and satisfactory ground that, where the carrier claims to have been exempted by a special acceptance from liability for its

negligence, or the negligence of its servants, it must show his immunity on the face of the agreement.   Nicholas v. N. Y. C. & H. R. R. R. Co., *ante.*

In Holsapple v. Rome, W. & O. R. R. Co., 86 N. Y. 275, by the term of the transportation contract, in consideration of reduction in the charges for freight, the carriers were released from liability originating in the viciousness or weakness of the animals, or from delays, or in consequence of heat, suffocation or of being crowded, " or on account of being injured, whether such injury shall be caused by burning of hay, straw or other material used for feeding such animals, or, otherwise, and for any damage occasioned thereby."   The agreement contained no words expressly and definitely exempting the carrier from liability for its own negligence.   The question presented was whether, upon any just interpretation, the contract can be said to create such an exemption.   The doctrine of Mynard v. Syracuse B. & N. Y. R. R. Co., *ante,* was considered to be decisive upon this question.   In that case, it was held that, where general words, limiting the liability of a carrier may operate without including its negligence or that of its servants, such negligence will not be within the exemption of the agreement.   However broad or general may be the language of the contract, which does not specifically and in express terms release the carrier from the consequences of its own negligence, it will not effect such release if the general words may operate without including such negligence.   Where the precise injury might have occurred, which actually happened, without fault or negligence on the part of the carrier, it would have been liable at common law, and irrespective of the question of negligence.   The injury in such case does not originate in the vitality of the freight or its inherent nature and condition.   Such liability was plainly asserted in the Mynard Case, and sustained by the authorities there cited.   It is in this respect that the Holsapple Case differs from that of Cragin v. N. Y. C. R. R. Co., 51 N. Y. 61. In the latter case, the injury resulted from the vitality of the animals, and their inherent nature and characteristics.   For such injury, the carrier was not liable at common law, and the general words of the release and exemption could not operate at all, unless upon the negligence of the carrier. The case was decided upon this precise ground.   It has, consequently, no application, where a common law liability would have attached to the carrier, even though the loss had not originated in negligence.   In such case, the general and broad words of the release may be operative without including the carrier's negligence.   Holsapple v. Rome, W. & O. R. R. Co., *ante.*

In Weinberg v. National Steamship Co., Super. Ct., Jan., 1890, plaintiff was a passenger on defendant's steamship, which sailed from Liverpool to New York.   The goods were delivered by her to the steamship, in case or trunk, as part of her baggage.   They were not delivered to her by the ship on its arrival to New York.   Her contract for passage was a special one.   It in terms exempted the company from liability for loss occasioned by the negligence of the company's servants.   But it did not, in terms nor by necessary implication, exempt the company from liability for loss occurring through its own negligence.

This left the company liable for its own negligence. The authorities of this state are to the effect that, though a common carrier may contract for exemption from liability for loss occurring through its own negligence, as well as that of its servant, Steers *v.* Steamship Company, 57 N. Y. 1 ; Poucher *v.* R. R. Co., *ante ;* Magnin *v.* Dinsmore, *ante,* the contract is not to be deemed to include its own negligence by any general words, nor unless it, in clear and explicit form embraces such negligence. Westcott *v.* Fargo, 61 N. Y. 542 ; Ghormely *v.* Dinsmore, 51 Super. 196 ; 53 Id. 36.

In the absence of fraud or imposition, the rights of carrier and shipper are controlled by a contract, in writing, delivered to the shipper by the carrier, at the time of the receipt of the property for transportation. Colender *v.* Dinsmore, 55 N. Y. 200 ; Long *v.* N. Y. C. R. R. Co., 50 Id. 76; Magnin *v.* Dinsmore, *ante.* In the last case, the contract contained the following clauses: " It is further agreed, and is part of the consideration of this contract, that the Adams Express Company are not to be held liable or responsible for the property, herein mentioned, for any loss or damage arising from the dangers of railroads, ocean, steam or river navigation, leakage, fire, or from any cause whatever, unless specially insured by them and so specified in this receipt ; which insurance shall constitute the limit of the liability of the Adams Express Company, in any event ; and, if the value of the property above described is not stated by the shipper, the holder hereof will not demand of the Adams Express Company a sum exceeding $50 for the loss or detention of or damage to, the property aforesaid."

The clauses quoted, although contained in a single sentence, are not alternative clauses relating to a single sort of loss, and dependent for their applicability on the circumstances specified. Each branch of the provision is complete in itself. The first excludes all liability on account of the dangers enumerated unless an insurance is effected with the company, and limits the liability, in case insurance is effected, to the amount so insured. This is declared to be, in any event, the limit of the company's responsibility. The further clause which follows does not relate to damage or loss from the dangers specified in the first clause, but to other grounds of claim against the company not therein included. In respect to these, it provides that, if the value of the property is not stated by the shipper, the holder of the receipt will not demand of the company more than $50 for the loss or detention of, or damage to, the aforesaid property. Id.

The carrier may, by contract, stipulate for exemption from liability beyond $50, for losses occurring through its negligence. Such a contract, if made, is valid in law. Id. This latter proposition must be deemed to be the law of this state.

In Belger *v.* Dinsmore, 51 N. Y. 166, the contract stipulated for immunity to the carrier, unless the loss should be proved to have occurred from the fraud or gross negligence of the express company, and, in any event, limited the recovery which might be had to $50, unless a greater value was specified. And effect was given to it according to its terms. The same decision was made in Steers *v.* Liverpool, N. Y. & P. S. Co., *ante,* upon a

contract worded, substantially, in the same manner. In this case, the provision for a limited liability is held to take effect, when the loss was through negligence, as all losses were excepted unless proved to have been occasioned by negligence. The same doctrine has been affirmed in many cases. Cragin v. N. Y. C. R. R. Co., *ante;* Bissell v. Same, *ante;* Newstadt v. Adams, 5 Duer, 43.

But the contract will not be deemed to except losses occasioned by the carrier's negligence, unless that is expressly stipulated. In Steinweg v. Erie R. Co., *ante,* the exemption was from damage or loss to any article by fire or explosion, and it was held not to apply to fire or explosion caused by the carrier's own negligence.

In Guillaume v. Hamburgh & A. P. Co., *ante,* the exemption was from any act, neglect or default of the pilot, master or mariners, and it was held that gross carelessness of the mate, in the delivery of property in port, ought not to be deemed within the exemption. In Lamb v. Camden & A. R. R. Co., 46 N. Y. 271, it was held that exemption from damage by fire did not exonerate from a loss by fire which resulted from the carrier's negligence. The case of Bostwick v. Baltimore & O. R. R. Co., 45 N. Y. 712, is, substantially, to the same effect. In Westcott v. Fargo, 6 Lans. 319, it was held that a clause limiting liability in terms equivalent to those in the above quoted contract, ought not to be construed to apply to losses occurring through the negligence of the carrier or his servant. The construction of such exemptions ought to be taken most strongly against the party whose language they are, and whose situation places him, at least, in a position of equal advantage in fixing the terms of the contract. Magnin v. Dinsmore, *ante.* The terms of these contracts are very much under the control of the carriers, and they may justly be required to express in plain terms the entire exemption for which they stipulate. If it is desired that a clause shall cover losses by negligence, it is not too much to say that the purpose must be clearly expressed. Id.

The case of Oppenheimer v. United States E. Co., 9 Alb. L. J. 187, asserts the established legal construction of such conditions to be, that they do not cover cases of actual negligence, unless that is expressly stated.

In Gleadell v. Thomson, 56 N. Y. 194, plaintiff received sheet iron under a contract of affreightment, by which he agreed to carry it on the ship, Cella, from London to the port of New York, and there deliver it to the shippers, or their order, on payment of the freight and charges specified. The bill of lading exempted the carrier from liability from loss or damage to the goods from certain enumerated causes, and, among others, from "any act, negligence or default whatsoever, of the pilot, master or mariners." It was held that this exemption related to negligence occurring while the goods were upon the ship in the course of the voyage, and did not protect the carrier from liability for negligence occurring after the goods were unladed, and while they remained in his custody before delivery.

In this same case, another clause in the bill of lading provided that the goods should be taken from along side by the consignee "immediately the vessel is ready to discharge, or otherwise the privilege is reserved to

the vessel to land them on the pier, or put them into craft or deposit them in the warehouse designated by the collector of the port of New York, all at the expense of the consignee, and at his risk of fire, loss or injury." It was held that the landing of the goods upon the pier of the plaintiff, under the circumstances of this case, did not change his relation to the goods, and divest him of his custody of them as carrier. The privilege to make this disposition was secured to him by the bill of lading, unless .the consignee was ready to take the goods from the ship whenever it was ready to discharge. The goods remained, after such deposit, in plaintiff's custody as carrier, subject to the modified responsibility, created by the contract, until after notice had been given to the consignees of their arrival, and a reasonable time had elapsed for their removal. In the meantime, the consignees assumed the risk of " fire, loss or injury" to the goods, according to the contract. The language used did not exempt the carrier from liability for an injury resulting from his own negligence. Id. ; Steinweg v. Erie R. Co., ante ; Edsall v. Camden & A. R. R. Co., 50 Id. 661.

In Westcott v. Fargo, ante, an action was brought to recover of the American M. U. Ex. Co. the value of a package of furs. The fur had been sent by the plaintiffs, from Utica, to the city of New York, to be dressed. Having been dressed, they were packed up in a small bale and delivered to the defendant for transportation to Utica. A receipt was given by the company which contained a clause to the effect that the company would not be liable for loss or damage, unless the claim therefor was made in writing " within thirty days from the accruing of the cause of action." It was held, in an action to recover for a loss, that the clause was not in the nature of a condition precedent to plaintiff's right to recover, but was in the nature of a limitation and could not be availed of, upon the trial, unless set up in the answer.

In this same case, the receipt also contained a stipulation that the company should " not be liable for any loss of or damage to, any box, package or thing for over $50, unless the just and true value" was therein stated. It was held that this stipulation, under the circumstance of the case, was a part of the contract and binding on the plaintiff. This was decided in Belger v. Dinsmore, 51 N. Y. 166, and in Steers v. Liverpool, N. Y. & P. S. Co., ante. It was further held in this case that the clause, in the carrier's receipt, was not sufficient to exempt it from losses occasioned by its negligence. This point is settled by decisions in the court of appeals. Belger v. Dinsmore, ante ; Steers v. Liverpool N. Y. & P. S. Co. ante ; Magnin v. Dinsmore, ante. The result of these cases is, that it is lawful for a carrier to make such a contract as was entered into in Westcott v. Fargo, ante, exempting him from liability, and that he may, by clear and distinct expressions, relieve himself from losses occasioned by his own negligence. On the other hand, general words, such as that " he will be liable for loss, detention or damage," are not to be construed to extend to losses, etc., occasioned by negligence. The words are' to be taken most strongly against the party whose language they are, and who is in an advantageous position in fixing the terms of the contract. There was in the

phraseology, used in Westcott *v.* Fargo, *ante*, no such clear and distinct expression of exemption from loss by negligence as the case of Magnin *v.* Dinsmore, *ante*, requires.

A clause in a bill of lading, given to the shipper of goods by a common carrier, exempting the latter from liability for loss of the goods from certain causes, is binding upon the shipper, as a special contract between the parties. Steinweg *v.* Erie R. Co., *ante*. The carrier remains subject to all the common law liability of a common carrier, save so far as it is exempted therefrom by the effect of such special contract. Id. Dorr *v.* N. J. N. Co., *ante*. Bissell *v.* N. Y. C. R. R. Co., *ante*. But where such clause releases the carrier "from damage to, or loss of any article from or by fire or explosion of any kind," it does not release him from liability for damage by those means, resulting from its own negligence. Steinweg *v.* E. R. Co., *ante*.

A common carrier may stipulate for exemption from liability for loss occurring through its negligence or that of its servants. Ghormley *v.* Dinsmore, 51 Super. 196 ; Steers *v.* Liverpool, N. Y. & P. S. Co., *ante ;* Poucher *v.* N. Y. C. R. R. Co., *ante*, Magnin *v.* Dinsmore, *ante;* 62 Id. 39. But such a contract will not be deemed to include negligence, unless negligence is in terms mentioned. Westcott *v.* Fargo, *ante ;* Mynard *v.* Syracuse, B. & N. Y. R. R. Co., *ante ;* Ghormley *v.* Dinsmore, *ante*. In this case a shipper's receipt required presentation of claim to the express company within thirty days from its date. It appeared that defendant undertook to search for plaintiff's lost package, and finally reported that it could not be found. It was held that these facts excused plaintiff from presenting his claim at an earlier date. See Smith *v.* Dinsmore, 9 Daly, 188.

In McElwain *v.* Erie R. Co., 21 W. Dig. 21, an action was brought for damages occasioned by a personal injury to plaintiff while a passenger on defendant's road, caused by negligence of its employees. A railroad pass had been given to plaintiff containing this provision : " The acceptance of this pass is to be considered a waiver of all claims against the Erie Railway Co. for personal damages and injuries received when on the above train." It was held not to release the company from the results of its employee's negligence.

In Elliott *v.* N. Y. C. & H. R. R. Co., Super. Ct. of Buff., Nov. 1890, plaintiff was an employee of the Western Union Tel. Co. His field of labor embraced the city of Buffalo and all the territory lying between that city and Syracuse. When called out of the city, he made use of defendant's road for transportation. The Telegraph Company and defendant had entered into a contract allowing the telegraph company to erect its lines upon the property of defendant, and giving to the latter free use of the lines for the purpose of its business. Upon the subject of the transportation of the officers and employees of the telegraph company, the contract provided: " And will pass free of charge the officers and employees of said telegraph company when traveling on the telegraph business of said line, provided said officers and employees have obtained and have in their possession and exhibit passes of the railroad company (which it will give) in which all re-

Note on " Carrier's Exemption from Liability."

sponsibility of the railroad company for any loss or damage or injury to said officers and employees shall be waived and released in the form usual in such cases." The pass was offered and it does not appear what the stipulations were, if any, upon it, nor was there an offer to prove them. It was held that this was not a contract of release but provided for one which should appear upon the pass.

No presumption can arise that the pass contained a release from liability from negligence of the carrier or its servants. On the contrary, every presumption is the other way. Id. Mynard v. Syracuse, B. & N. Y. R. R. Co., *ante;* Nicholas v. N. Y. C. R. R. Co., *ante.*

In Wells v. Steam N. Co. *ante,* the owners of a steam-boat, used for towing boats upon the Hudson river, agreed for hire to tow a boat from New York to Albany, " at the risk of the master and owners." It was held that the owners of the steamboat were liable for injuries arising from the gross negligence of their servants navigating it, though not occasioned by fraud or want of good faith. The phrase "at the risk of the master and owners," in such a contract, has reference to the perils of the navigation, not arising from the gross negligence of the contractor. Id. A stipulation in the contract to exempt from gross negligence must be specific and distinct. It will not be implied from a clause containing a general expression which might otherwise be so construed. Id. Where a party vested with a temporary control of another's property, for a special purpose of this kind, would shield himself from a responsibility, on account of the gross neglect of himself or his servants, he must show his immunity on the face of his agreement. Id.

In Alexander v. Greene, *ante,* the court decided that, under a similar contract, a towing company was liable for injuries resulting from gross negligence. The supreme court held that the permit furnished evidence that the plaintiffs agreed to take all risks upon themselves, and that the defendants were not liable even for gross negligence. The court of errors reversed the judgment on the ground that the circuit judge erred in not submitting the question of gross negligence to the jury, and in not holding the defendants liable for acts occasioned by gross negligence. There was no intimation in that case that the defendants could be made liable only for fraud or a want of good faith.

Though the law will not suffer a man to claim immunity by contract against his own fraud, there is no reason why this may not be done in reference to fraud or felony committed by those in his employment. Wells v. Steam Nav. Co., *ante.*

In Platt v. Richmond, etc., R. R. Co., 52 Super. 496, it was held that, where a bill of lading contains a clause exempting the carrier from loss or damage by fire, unless such fire is proved to have occurred from the fraud or gross negligence of defendant or its agents, the burden is on plaintiff, seeking to recover for such loss, to show that the fire occurred from the causes enumerated. See Whitworth v. Erie R. Co. 87 N. Y. 413.

In Ulrich v. N. Y. C. & H. R. R. R. Co., 108 N. Y. 80, plaintiff, who was traveling on a regular train on defendant's railroad on a free pass, was

injured by a collision caused by defendant's negligence. On the pass, was an endorsement to the effect that, in consideration of receiving it, the holder assumed all risks of accident and agreed that the company should "not be liable under any circumstances, whether by negligence of their agents or otherwise," for injury to his person or property, and that, in the use of the pass, he would, " not consider the company as a common carrier or liable to him as such." Plaintiff purchased a ticket entitling him to a seat in a drawing-room car upon the train. Such purchase was made from the drawing-room car conductor. It was stated in the ticket given for the seat that it " with passage ticket or fare " would be taken up by the conductor. It was held, in an action to recover damages for the injury, that this ticket did not make plaintiff a passenger for hire and did not have the effect to annul or vary, for the trip, the contract made by the pass and its indorsement; that, even though such a purchase of a seat ticket had the same force and effect as though purchased from the train conductor, it had no effect upon the status of the purchaser as a passenger.

Where goods are to be carried over the lines of several different companies, it is perfectly competent for those companies to limit their liability by contract as expressed in the bill of lading. Shiff *v.* N. Y. C. & H. R. R. Co., 16 Hun, 278; aff'd 81 N.Y. 638; Ricketts *v.* Baltimore & O. R. R. R. Co., 59 Id. 637; Belger *v.* Dinsmore, *ante ;* Dorr *v.* New Jersey N. Co., *ante ;* New Jersey N. Co. *v.* Merchants' Bank, *ante ;* Nicholas *v.* N. Y. C. & H. R. R. Co., 4 Hun, 329.

The court of appeals held, in Ricketts *v.* Baltimore & O. R. R. Co., *ante,* that, where a bill of lading contained a provision, in substance, that no connecting carrier should be held liable for any loss or damage to goods, except what occurred on its own route, the defendant could not be held responsible for loss or injury arising from the negligence of another carrier. Where the default occurs upon one of the roads, which takes possession of the shipper's goods, after the contracting company has carried such goods over its own route safely and in good time, order and condition, and has delivered them to the next continuing line, the former carrier is not liable for any injuries which may happen to the goods at a subsequent period in their transportation. Shiff *v.* N. Y. C. & H. R. R. R. Co., *ante.*

*It seems* that where, by the statute law of the state, a railroad company in the state is prohibited from limiting by contract its common law liability, the statute has no effect upon a contract made in such state and in reference to goods shipped therein, but which limits the liability of a railroad company in another state for the transportation of such goods in that state. Platt *v.* Richmond, Y. R. & C. R. R. Co., *ante.*

*What necessary to create exemption.*—A common carrier cannot free himself from liability by notice, whether brought home or not to the shipper. Dorr *v.* N. J. S. N. Co., *ante.* Since the very thorough discussion of this question in Hollister *v.* Nolan, 19 Wend. 234, and Cole *v.* Goodwin, Id. 251, it has been regarded as settled, and the conclusion arrived at in those cases has been uniformly acquiesced in and followed in this state.

Note on " Carrier's Exemption from Liability."

See Camden Company *v.* Belknap, 21 Wend. 354; Clark *v.* Faxton, Id. 153; Alexander *v.* Greene, 3 Hill, 9; *ante ;* Powell *v.* Myers, 26 Wend. 594. These decisions rest on the very satisfactory reasons, that the notice was no evidence of the assent on the part of the shipper, and that the latter had a right to repose upon the common law liability of the carrier, which could not relieve itself from such liability by any mere act of its own.

But it is competent for the carrier and the shipper, by an agreement between themselves, to establish conditions of liability, different from those cast by law upon a common carrier. Dorr *v.* N. J. S. N. Co., *ante.*

In Gould *v.* Hill, 2 Hill, 623, it was held that common carriers could not limit their liability, or evade the consequences of a breach of their legal duties as such, by an express agreement or special acceptance of the goods to be transported. But this case has been deliberately overruled in the cases of Parsons *v.* Monteath, 13 Barb. 353, and Moore *v.* Evans, 14 Id. 524; and the case of Gould *v.* Hill has not been followed in any reported case.

But it is a well established rule of law that the carrier may, by express contract, restrict his common law liability. Upon principle, no good reason can be assigned why the parties may not make such a contract as they please. It is not a matter affecting the public interests. No one but the parties can be the losers, and it is only decided by agreement which shall take the risk of the loss. The law, where there is no special acceptance, imposes the risk upon the carrier. If the owner chooses to relieve him and assume the risk himself, who else has a right to complain ? The extent of the risk will be measured by the amount of compensation, and the latter, it will be admitted, may be regulated by agreement. The right to agree upon the compensation cannot, without great inconsistency, be separated from the right to define and limit the risk. It is enough that the law declares the liability, where the parties have said nothing on the subject. But, if the parties will be better satisfied to deal on different terms, they ought not to be prevented from so doing. Dorr *v.* N. J. S. N. Co., *ante.*

When a special contract is made, the relations of carrier and shipper are changed, and the carrier becomes, as to that transaction, an ordinary bailee and private carrier for hire. This neither changes nor interferes with any established rule of law. It only makes a case to be governed by a different rule. To say that the parties have not a right to make their own contract and to limit the precise extent of their own respective risks and liabilities, in a matter in no way affecting the public morals or conflicting with the public interests, would be an unwarrantable restriction upon trade and commerce, and a most palpable invasion of personal right. Id.

It was held in Reed *v.* Fargo, 54 Hun, 635, that, in the absence of a receipt or other written contract for the carriage of the goods, the carrier's liability for the negligence of its servant cannot be restricted by proof of the plaintiff's knowledge of the conditions in its shipping bills or receipts, or by vague and inconclusive evidence of a parol agreement to absolve it from liability. The extent of the liability of the carrier cannot be limited to $50, unless a contract to that effect is shown. Id.

Note on "Carrier's Exemption from Liability."

The common law liability of common carriers cannot be limited by a notice, even though brought to the knowledge of the persons whose property they carry. Blossom *v.* Dodd, *ante;* Dorr *v.* N. J. S. N. Co., *ante.* But such liability may be limited by express contract. Blossom *v.* Dodd, *ante;* Bissell *v.* N. Y. C. R. R. Co., *ante;* French *v.* Buffalo, N. Y. & E. R. R. Co., 4 Keyes, 108. If a common carrier is to be allowed to limit his liability, he must take care that any one who deals with him is fully informed of the limits to which he confines it. The nature of the express business does not necessarily convey to the traveler the idea of a contract in such a manner as to raise the presumption that he knew that the card received was a contract, expressive of the terms upon which the property was carried or limiting the liability of the carrier. Tokens, checks, or cards, given in exchange for baggage checks, are not of such a nature as to put persons on their guard as to memoranda printed upon them, and persons receiving them are not presumed to know their contents or to assent to them. Blossom *v.* Dodd, *ante.* At all events, to have such effect, the limitation should be as conspicuous and legible as other portions of the paper. In Brown *v.* E. R. R. Co., 11 Cush. 97, the limitation was printed upon the back of a passenger ticket. It was stated that the party receiving it might well suppose that it was a mere check, signifying that the party had paid his passage to the place indicated on the ticket. In the cases of Prentice *v.* Decker, 49 Barb. 21, and Limburger *v.* Westcott, Id. 283, limitations were claimed upon the delivery of similar cards of an express company. The court held, in both cases, that such delivery did not charge the person receiving them with knowledge that they contained contracts. A different construction was put upon the delivery of such a card, in Hopkins *v.* Westcott, 6 Blatchf. 64. The judge, who delivered the opinion, intended to decide, in this case, that something short of an express contract will suffice to screen the carrier from his common law liability, and that a notice, personally served, which could be read, would have that effect.

The delivery and acceptance of a paper containing the contract may be binding, though not read, provided the business is of such a nature and the delivery is under such circumstances as to raise the presumption that the person receiving it knows that it is a contract, containing the terms and conditions upon which the property is received to be carried. In such a case, it is presumed that the person assented to the terms, whatever they may be. This is the utmost extent to which the rule can be carried, without abandoning the principles that a contract is indispensable. Blossom *v.* Dodd, *ante.* The case of Grace *v.* Adams, 100 Mass. 560, was decided upon this principle. In that case, the plaintiff delivered a package of money to an express company, and took a receipt containing a provision exempting the company from liability from loss by fire. The court held that the plaintiff knew that the receipt contained the conditions upon which the money was to be carried, and was, therefore, presumed to have assented to them, though he did not read the paper.

As to bills of lading and other commercial instruments of like character, it has been held that persons receiving them are presumed to know, from

their uniform character and the nature of the business, that they contain the terms upon which the property was to be carried. But checks or cards for baggage are not of such a character. The person is not presumed to know their contents or to assent to them. Blossom *v.* Dodd, *ante.*

In this case, a railroad passenger in a car, dimly lighted at one end, delivered his baggage check to an express messenger and received in return a card or receipt therefor. On it the number of the check was entered. It also contained an agreement, limiting the liability of the express company, printed in much smaller type than the rest of the card, and so fine as to be illegible where the passenger was sitting. And it was held that the printed matter did not enter into or form a contract between the parties.

As a general rule, when goods are delivered to a carrier for transportation, and the bill of lading or receipt is delivered to the shipper, he is bound to examine it and ascertain its contents. Germania Fire Ins. Co. *v.* Memphis & C. R. R. Co., 72 N. Y. 90. If he accepts it without objection, he is bound by its terms, and resort cannot be had to prior parol negotiations to vary them. Id.; Long *v.* N. Y. C. R. R. Co., *ante.* Neither can he set up ignorance of its contents. Id.; Belger *v.* Dinsmore, *ante ;* Steers *v.* Liverpool, N. Y. & P. S. Co., *ante ;* Maghee *v.* C. & A. R. R. Co., 45 Id. 514. To take a case out of this general rule, it must appear that, before the delivery of the bill of lading, the goods have been shipped, so that the shipper could not have reclaimed them had he objected to the contents of the bill of lading. Germania F. Ins. Co. *v.* Memphis & C. R. R. Co., *ante.* Where the bill of lading contains a clause exempting the carrier from loss by fire, there is no liability for such a loss, unless it was occasioned by the negligence of the carrier. Id.

Where a traveler on delivery of baggage to a local express company, receives a paper, which, from the circumstances of the transaction, he has a right to regard simply as a receipt or voucher, to enable him to follow and identify his property, and no notice is given to him that it embodies the terms of a special contract, or is intended to serve any other purpose than as a voucher, his omission to read the paper is not *per se* negligence, and he is not, as matter of law, bound by its terms. Madan *v.* Sherard, *ante.* The question whether, in a particular case, the party receiving such a receipt accepted it with notice of its contents, or with notice that it contained the terms of a special contract, so as to require him to acquaint himself with its contents, is one of evidence to be determined by the jury. Id. The fact of notice may be proved by direct or circumstantial evidence. If circumstantial evidence is relied upon, the range of the testimony permissible can only be restricted at the point where the circumstances sought to be shown cease to have any relevancy to the inquiry. The fact that the receipt is printed in large type, and can easily be read ; that it is received in the day time, or when there is sufficient light to enable the traveler to read it ; that he is acquainted with the methods of the business, these and other facts may be shown, not as conclusive against the recovery, but as bearing upon the ultimate fact to be proven, namely, that the party, when he ac-

cepted the receipt, knew of its limitations, or that it contained special terms for the carriage of the property. Id.

In this case, the carrier's agent came into a railroad car, in which plaintiff was traveling, and called for baggage. He received the check for plaintiff's trunk with directions as to the delivery. He marked on a blank receipt the date, number of check, and date of delivery, and handed it to plaintiff, without anything being said as to its contents. The car was dimly lighted, so that plaintiff, where he was seated, could not have read the receipt. And without looking at or reading it, he put it in his pocket. This receipt was marked upon the margin " domestic bill of lading," and purported to be a contract relieving defendant from, or limiting its liability, in certain specified cases, and, among others, limiting its liability, save in case of a special contract, to $100. It was held that defendant, in order to relieve itself from full liability, was bound to establish a contract upon the special terms contained in the receipt ; and that no such contract arose, as matter of law, from the acceptance of the receipt under the circumstances.

A limitation from liability contained in a drover's pass was held, in Hastings *v.* New York, O. & W. R. R. Co., 53 Hun, 638, not to constitute a defense to a breach, prior to its delivery, of an agreement to furnish cars for transportation.

Where, upon the delivery of goods to a carrier for transportation and, before shipment, a receipt or bill .of lading is delivered to the shipper, and received by him without objection, he is chargeable with notice of its contents, and is bound by its terms. Hill *v.* Syracuse, B. & N. Y. R. R. Co., 73 N. Y. 351. By accepting the contract without objection the carrier had a right to assume that the shipper assented to its term, and the fact of not reading it cannot be interposed to prevent the legal effect of the transaction. Id.; Long *v.* N. Y. C. R. R. Co., *ante ;* Belger *v.* Dinsmore, *ante ;* Steers *v.* Liverpool N. Y. & P. S. Co., *ante ;* Maghee *v.* C. & A. R. R. Trans. Co., *ante.* In such case prior parol negotiations cannot be resorted to to vary the terms. Id.

It is well settled that, when the carrier has not given notice that he will not be answerable for parcels, beyond a specified sum, unless informed of the value, or has made a special acceptance, it is not the duty of the shipper to state the quality or value. Baldwin *v.* Liverpool & G. W. S. Co., 74 N. Y. 125. This rule does not apply, if the shipper has used any means to conceal the value of the article, or is guilty of any misrepresentation or fraud in respect to it. Id.; Orange County Bank *v.* Brown, 9 Wend. 85.

In Magnin *v.* Dinsmore, 62 N. Y. 35, the point decided was that, when the carrier by the contract limits his liability to a specified amount, if the value is not stated by the shipper, the delivery of the article without anything being said is a sufficient representation that the article is not in value beyond the limits to constitute a fraud in law, which will discharge the carrier from liability at least for ordinary negligence. This is upon the ground that the carrier is thereby deprived of his proper reward, and is misled as to the degree of care and security which he should provide. Acts may constitute misrepresentation as well as words. A passenger,

though silent, by delivering an ordinary trunk and taking passage for himself, gives the carrier to understand that it contains ordinary baggage only. So, the shipper, having notice of a limited liability, represents in effect, by delivering the article without specifying the value, that its value does not exceed the limit.    This is as far as any of the cases have gone in favor of the carrier, and the doctrine, resulting in immunity from liability, should not be extended.    Baldwin *v.* Liverpool & G. W. S. Co., *ante.*

A contract between the shippers and the carrier that, if the former does not state to the latter the value of the property shipped, they will not demand of it a sum exceeding $50 for the loss or detention thereof, does not, *per se,* excuse the defendant from liability for a loss arising from its negligence.   Magnin *v.* Dinsmore, 56 N. Y. 168.   A shipper may become chargeable with fraud upon a carrier, through imposition and deception, as well when he is silent as when he speaks that which is untrue.   Magnin *v.* Dinsmore, 62 N. Y. 35.   A neglect to disclose the real value of the package, and the nature of its contents if there is that in its form, dimensions and other appearance designed, and even though not designed, if fitted, to throw the carrier off his guard, will be conduct amounting to such fraud.   The intention to impose upon the carrier is not material.   It is enough that such is the practical effect of the shipper's conduct.   Id.; Pardee *v.* Drew, 25 Wend. 459.

Where there is no special contract limiting the common law liability of the carrier, nor any notice so specially brought home to the knowlegde of the shipper as to have that effect, the latter is not bound to disclose the value of the goods unless he is asked about it by the carrier.   Id.   But the carrier has a right to make inquiry and to have a true answer.   If he is deceived by a false answer given, he will not be responsible for any loss. If he makes no inquiry, and no artifice is used to mislead him, he is responsible for loss, however great may be the value.   Id.   Where there is a special contract limiting liability, or other thing tantamount thereto, it is otherwise.   Id.

By delivery without information, the shipper holds the article out to the carrier as an ordinary article, which he would have no objection to take as matter of course.   In case of a valuable package, it is the duty of the shipper, not to deliver as ordinary goods, but to inform of its nature and value. In point of law, it is a concealment, and fraud and deceit in law, not to do so.   Id.

In Orange County Bank *v.* Brown, *ante,* it was stated that the carrier in such case is not bound to make inquiry, and if the owner omits to make known the value, he is liable only to the amount mentioned in his notice, or not at all, according to the terms of such notice.   It is true that, in this case, the carrier had not given notice to the owner, nor otherwise made express special acceptance.   But he was a carrier of passengers only, and thus there was a practical limited acceptance.   He was not, in the absence of information of value or nature of the goods committed to him, to be held to a carrier's duty and liability, further than for a traveler's ordinary bag-

gage. This case was also one of more than silence merely as to value, as the large sum of money, for which it was sought to charge the carrier, was placed in an ordinary traveling trunk, and thus, to a degree, making an affirmation of slight value. So that this utterance of the court may not have the force of a binding authority. Magnin *v.* Dinsmore, *ante.*

As a general rule, the carrier, because of his public employment, must take and carry that which is offered to him for such purpose. But he ought to have a reasonable reward for the carriage. As the risk of carriage of a parcel of much value is greater than one of slight value, the reward for it should be greater. And as the risk is greater the care should be greater, and it will be so if the value is known. The carrier should, therefore, know of the value of the package which he is called upon to carry that he may exact his due reward and take due care. Id.

In Magnin *v.* Dinsmore, 70 N. Y. 410, the rule laid down upon the former appeal in the same case was reiterated, to wit: That, where a carrier, by his contract limits his liability to a specified amount in case the value of goods delivered for carriage is not stated by the shipper, if goods of greater value are so delivered, silence on the part of the shipper as to the real value, although there is no inquiry by the carrier and no artifice to conceal the value or to deceive, is a legal fraud, which discharges the carrier from liability for ordinary negligence for an amount exceeding the limitation of the contract. The disclosure of the value of the goods is a condition precedent to the attaching of any liability to the carrier for merely ordinary neglect, unaccompanied with any misfeasance or any willful act. Id. The value of the property is intimately connected with the question of negligence, and the degree of care required from the bailee. An omission upon the part of the carrier to make inquiry as to the value is not a waiver of the limitation in the contract. Id. Negligence alone is not a misfeasance or an abandonment of the character of carrier, which will deprive him of the benefit of such limitation. Id. The act, which will have such effect, must be an affirmative act of wrong doing, not merely ordinary neglect in the course of the bailment. It need not necessarily be intentional wrongdoing; but the mere omission of ordinary care in the safe keeping and caring for the goods is not the misfeasance intended by the authorities. Id. The burden of proving the wrong-doing or misfeasance is upon the parties claiming it. Id.

In Huntington *v.* Dinsmore, 4 Hun, 66, it was held that, in the absence of fraud or imposition, the receipt delivered by the agent of an express company to the person shipping a package must be held to be the contract between the parties. See Belger *v.* Dinsmore, *ante;* Collender *v.* Same, *ante;* Wetzell *v.* Same, 54 Id. 496; Long *v.* N. Y. C. R. R. Co., *ante;* Root *v.* Great Western R. R. Co., 45 Id. 524; Reed *v.* United States Ex. Co., 48 Id. 462; Babcock *v.* Lake Shore & M. S. R. R. Co., 49 Id. 491; Breese *v.* United States Tel. Co., 48 Id. 132. It is immaterial whether or not the amount paid by the agent of the shipper is more or less than the actual charge for carriage. Id.

As a general rule, the bill of lading given by a carrier to, and accepted

Note on " Carrier's Exemption from Liability."

by the shipper of goods contains the contract for carriage, and in the absence of fraud, imposition or mistake, the parties are concluded by its terms as there expressed. Jennings v. Grand T. R. Co. Ct. of App., Oct., 1891; Long v. N. Y. C. R. R. Co., ante; Kirkland v. Dinsmore, 62 Id. 171; Hill v. Syracuse, B. & N. Y. R. R. Co., ante.

An express company is to be regarded as a common carrier, and its common law liability may be limited by express contract. Belger v. Dinsmore, ante. In the absence of fraud, concealment or improper practice, the legal presumption is that stipulation limiting its common law liability, contained in a receipt given by such company for freight, are known and assented to by the party receiving it. Id.

In this case defendant received from plaintiff a trunk to transport from Baltimore to New York. It gave a receipt, which contained a statement, among other things, that, as part of the consideration of the contract, it was agreed that the holder, in case of loss, should not demand beyond the sum of $50, at which the article forwarded was thereby valued, unless otherwise expressed. It was held that, by accepting the receipt and omitting to have a different value expressed, plaintiff assented to the valuation of $50, and to a limitation of his claim to that sum in case of loss.

This case is entirely different in its material facts and circumstances from that of Blossom v. Dodde, ante. In that case, a passenger in a railroad car, dimly lighted by a single light at one end, delivered two baggage checks to an express messenger and received in return a card or receipt, on which the numbers of the checks were entered, and which also contained an agreement below the receipt and separated therefrom by a line drawn under it, limiting the liability of the company, printed in much smaller type than the rest of the card or receipt. It was not read by the passenger, and was in fact illegible where he was sitting.

The acceptance without objection, by a shipper, of an express company's receipt for goods delivered, though it is unread at the time, constitutes a contract between the parties, and binds them as to the conditions contained in it. Soumet v. National Ex. Co., 66 Barb. 284.

In Woodruff v. Sherrard, 9 Hun, 322, a daughter of the plaintiff delivered a check for a trunk to the clerk of a transfer company at its office in New York, with directions to transport the same to her house in Brooklyn. Upon the suggestion of her companion, she demanded a receipt of the clerk who thereupon delivered her one, by which it was, among other things, stipulated that the company should not be liable to an amount exceeding $100, unless a special contract was made. She did not read the receipt or know its contents until after the loss of the trunk. It was held, in an action to recover the value of the trunk, that she never assented to the terms of the contract limiting the liability of the company, and that plaintiff was entitled to recover the full value of the trunk. While the carrier should be protected in his legal right to limit his responsibility, the public should also be protected against imposition and fraud. The carrier must deal with the public on terms of equality. If he desires to limit his liability, he must secure the assent of those with whom he transacts business. Blossom v.

Note on " Carrier's Exemption from Liability."

Dodd, *ante.* The case of Kirkland *v.* Dinsmore, 62 N. Y. 171, contains nothing different from this proposition, and in no way conflicts with what was decided in the Blossom Case. The case of Woodruff *v.* Sherrard, *ante,* differs in this respect, materially from that of Belger *v.* Dinsmore, 51 N. Y. 166, in which it was not shown, nor was there any evidence whatever warranting the inference, that the wife of the plaintiff, when she took the receipt, did not know, and was not fully informed of, what provisions it contained, and fully understood them.

In Ghormley *v.* Dinsmore, 53 Super. 36, there was a clause in the receipt and contract of an express company limiting its liability in any event to a specified sum, unless otherwise therein expressed, if the value of the package delivered for shipment is undisclosed and unexpressed. The company was not held liable beyond the sum named for a mere non-delivery of the goods on demand, unaccompanied by any conversion or misfeasance by the carrier, and not involving any wilful act. See Magnin *v.* Dinsmore, 38 Super. 248; Hart *v.* Penn. R. R. Co., 112 U. S. 331 ; Falkenan *v.* Fargo, 35 Super. 332 ; aff'd 55 N. Y. 642.

In the case of Belger *v.* Dinsmore, *ante,* it was decided that, in the absence of fraud, concealment or improper practice the legal presumption is that stipulations limiting the common law liability of common carriers contained in a receipt given by them for freight, are known and assented to by the party receiving it. The decision in Blossom *v.* Dodd, *ante,* was examined in this case and shown to be entirely consistent with the conclusion reached. There can be perceived no distinction growing out of the fact that, the subject was the transportation of a passenger and her baggage, which can render that decision inapplicable. Steers *v.* Liverpool, N. Y. & P. S. Co., *ante.* In this case, plaintiff took passage on one of defendant's steamers. for Europe. On payment of the passage money, she received a printed ticket signed by defendant's agent, containing a clause, in substance, that the company was not to be held liable for loss or damage to baggage in any sum, unless the same shall have been proved to have been occasioned by gross negligence of the company or its agents, or, in any event, beyond the sum of $50, unless a bill of lading or receipt was signed therefor, specifying the articles and their values, and that money, jewelry and all valuables were at the passenger's risk, unless placed in the company's charge, and a bill of lading or receipt signed therefor. Plaintiff's trunk was delivered into the custody of defendant's agent, who assumed to take charge of it. At the end of the voyage, defendant did not produce it, or in any way account for it. It was held, in an action to recover for the loss of the trunk and contents, that the evidence was sufficient to sustain a finding by a jury of gross negligence; but that, in the absence of a bill of lading or receipt as specified in the contract, a recovery could not be had for over $50, and no recovery could be had for jewelry or silverware. While the cases of Belger *v.* Dinsmore, *ante,* and Cochran *v.* Dinsmore, 49 N. Y. 249, sustain the validity of such a provision, the latter holds that the burden is upon the plaintiff to show that the loss did proceed from the gross negligence of the carrier or his servants. A new trial was granted in that case because the court on the trial erred in imposing the burden on the carrier.